### TUXEDO CONTRACTORS, INCORPORATED

v.

### SWINDELL–DRESSLER COMPANY, A Division of Pullman, Incorporated, et al.

### No. 77–2114.

United States Court of Appeals, District of Columbia Circuit.

Submitted without Argument Nov. 30, 1978.

Decided Dec. 26, 1979.

---

Francis J. Pelland, Washington, D.C., was on brief, for appellant.

John H. Tracy, Vienna, Va., was on brief, for appellees.

Before TAMM and ROBINSON, Circuit Judges, and JOHN H. PRATT *, United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant, Tuxedo Contractors, Incorporated, brought suit in the District Court against appellees, Swindell-Dressler Company and Paul R. Jackson Construction Company, Incorporated, alleging tortious interference with a contract between appellant and Hartwick Construction Company (Hartwick). After a bench trial, the court held that appellant had failed to establish sever-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

al essential elements of its cause of action, entered judgment for appellees and dismissed the case with prejudice.[1] This appeal challenges the court's factual and legal conclusions on two principal grounds.[2] We find the arguments advanced by appellant unpersuasive, and therefore affirm.

## I

The undisputed facts may be briefly stated. Appellant and Hartwick negotiated an agreement[3] pursuant to which appellant prepared a bid for an asphalt repair contract with the District of Columbia, and Hartwick then submitted the bid as potential prime contractor. The agreement stated that Hartwick, if successful, would subcontract with appellant for all work to be performed, thus confining Hartwick's obligation to provision of a performance bond and payment to appellant of a specified percentage of the receipts from the District.[4]

Appellees, as a joint venture, also tendered a bid,[5] which proved to be lowest, and received notice that they had been awarded the repair contract.[6] After discovering these facts, appellant, which through Hartwick had presented the second lowest pro-

posal,[7] entered in Hartwick's name a formal protest of the award on the ground that appellees' bid was nonresponsive.[8] The protest was ultimately upheld, and thereupon the contract went to Hartwick.[9]

In the interim, however, Hartwick had chosen to withdraw from its agreement with appellant and to give the subcontract to appellees.[10] Appellant contends that appellees induced Hartwick to make this decision, and that in doing so they wrongfully interfered with appellant's contract with Hartwick.[11] Appellees, on the other hand, assert that they did not cause Hartwick's repudiation and, moreover, that they had insufficient knowledge of the Tuxedo-Hartwick agreement to be charged with any tort respecting it.[12]

## II

The District Court's jurisdiction in this case rested solely on diversity of the parties' citizenship.[13] Normally, then, we would first ascertain just whose local law is properly to be applied.[14] But the parties have not briefed the choice-of-law issue, and have not questioned the District Court's apparent assumption that District of Columbia law controls.[15] In similar situations

---

1. *Tuxedo Contractors, Inc. v. Swindell-Dressler Co.*, Civ. No. 76–0047 (D.D.C. Oct. 26, 1977), Joint Appendix (J.App.) 13.

2. Discussed in Parts II, III *infra*.

3. At trial, appellees argued that the agreement was not enforceable. Just how much that might have helped their cause is unclear. See generally W. Prosser, Law of Torts, § 129 at 931–934 (4th ed. 1971). In any event, the District Court held that there was a valid compact, *id.* at 11 & n. 9, and this ruling is not challenged here.

4. J.App. 5–6.

5. J.App. 6.

6. J.App. 6.

7. J.App. 6.

8. J.App. 6.

9. J.App. 6.

10. J.App. 25–29.

11. Brief for Appellant at 5–6.

12. Brief for Appellees at 7–9.

13. 28 U.S.C. § 1332 (1976).

14. As we stated in *Lee v. Flintkote Co.*, 193 U.S.App.D.C. 121, 124 & n. 14, 593 F.2d 1275, 1278 & n. 14 (1979), when appropriate we apply the choice-of-law and substantive decisional rules of the District of Columbia courts although, because of the District's unique position, the Rules of Decision Act, 28 U.S.C. § 1652 (1976), *does not bind us to that result.* Compare, *e. g., Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Instead, we do so out of deference to the authority of the District of Columbia Court of Appeals as the highest court of the District, and in order not to subvert the aims of *Erie. Lee v. Flintkote, supra.*

15. The District Court relied almost exclusively on District of Columbia cases in defining the elements of the tort. See J.App. 10–12. The

in the past we have sustained that court's utilization of District law.[16] We do so here as well.

 To recover under District of Columbia law on a theory of wrongful inducement of a breach of contract, the plaintiff "must show (1) a contract; (2) knowledge of the contract; (3) intentional procurement of its breach by the defendant; and (4) damages resulting from the breach."[17] The District Court held that appellant had failed to prove the second and third elements and thus had not made out a prima facie case.[18] Appellant challenges these rulings, claiming that the court misapprehended the law and that its factual conclusions are without sufficient evidentiary support.[19] Our review of the record satisfies us that the District Court correctly interpreted the applicable substantive law[20] and that its findings of facts were not clearly erroneous.[21]

 The District Court found, first, that appellant had not proven "intentional procurement of [the] breach"[22] because it had failed to demonstrate that appellees' actions substantially contributed to Hartwick's decision to dishonor the agreement with appellant.[23] This pertains to the issue of causation, and is a determination of fact[24] which we may reverse only if the resolution is clearly erroneous.[25] The record affords no basis for such a conclusion.

Prior to any contacts with appellees, Hartwick had begun to have second thoughts about undertaking the repair contract with appellant. Jack Y. Matthews, the chief executive officer of Hartwick, testified that he was concerned about appellant's ability to perform the construction work[26] and about Hartwick's ability to obtain a performance bond in compliance with its side of the agreement with appellant.[27] Moreover, when appellees later approached Matthews, he felt that Hartwick was no longer bound by its promise to subcontract to appellant.[28] As a consequence of his

---

parties themselves, both at trial and on appeal, have also referred primarily to District of Columbia caselaw.

**16.** *Lee v. Flintkote Co., supra* note 14, 193 U.S.App.D.C. at 125–126, 593 F.2d at 1279–1280; *Jannenga v. Nationwide Life Ins. Co.,* 109 U.S.App.D.C. 385, 388, 288 F.2d 169, 172 (1961); accord, *Young v. State Farm Mut. Auto. Ins. Co.,* 213 A.2d 890 (D.C.App.1965).

**17.** *Hunter Vending Co. v. D.C. Vending Co.,* 345 A.2d 142, 143 (D.C.App.1975); accord, *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan,* 374 A.2d 284, 288 (D.C.App.1977); *Bergman v. Gitelson & Neff Assoc.,* 267 A.2d 360, 362 (D.C.App.1970); *Dunn v. Cox,* 163 A.2d 609, 611 (D.C.Mun.App.1960).

**18.** *Tuxedo Contractors, Inc. v. Swindell-Dressler Co., supra* note 1, at 5–6, J.App. 11–12.

**19.** Brief for Appellant at 5–7.

**20.** See notes 43–46 *infra* and accompanying text.

**21.** See notes 26–42 *infra* and accompanying text. Since the court believed the prerequisites to recovery were not established, it did not reach the issue of damages. It did, however, suggest that appellant had not adequately shown the extent of any lost profits. *Tuxedo Contractors, Inc. v. Swindell-Dressler Co., supra* note 1, at 6 n. 11, J.App. 12 n. 11. We affirm the court's holdings on other elements of

appellant's claim, and intimate no view on that question.

**22.** Quoting *Hunter Vending Co. v. D.C. Vending Co., supra* note 17, 345 A.2d at 143.

**23.** *Tuxedo Contractors, Inc. v. Swindell-Dressler Co., supra* note 1, at 5, J.App. 11.

**24.** See *Kassman v. American Univ.,* 178 U.S. App.D.C. 263, 266, 546 F.2d 1029, 1032 (1976); *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan, supra* note 17, 374 A.2d at 288; *Bergman v. Gitelson & Neff Assoc., supra* note 17, 267 A.2d at 362; see generally W. Prosser, *supra* note 3, § 129, at 935.

**25.** Fed.R.Civ.P. 52(a).

**26.** J.App. 26.

**27.** Supplemental Appendix (Supp.App.) 31.

**28.** J.App. 26–27, 28. By reason of appellees' bid and the protest against it, the bid period had expired. Matthews thought that, consequently, Hartwick was no longer required to accept the repair contract even if offered by the District of Columbia. We express no view respecting the question whether Hartwick's obligations to the District had, in fact, expired as Matthews supposed. The critical issue is Matthews' attitude toward the contract with appellant, not the validity of his assumptions.

misgivings, Matthews had even attempted to withdraw from the bid protest, though he was subsequently persuaded to continue it,[29] and he further avowed that at that time he probably did not intend to enter into a subcontract with appellant.[30] It was some three weeks after these events that appellees contacted Hartwick for the first time and sought to negotiate an agreement under which they, and not appellant, would execute the subcontract.[31]

On the other hand, there was also evidence tending to show that, despite Matthews' apprehensions, Hartwick would have kept its bargain with appellant had appellees not sown further doubts in Matthews' already receptive mind[32] and at the same time offered him a more advantageous arrangement, under which Hartwick would not even have to provide a performance bond for the work.[33] Then, too, Matthews testified that if Hartwick had not subsequently agreed to subcontract to appellees, it probably would have fulfilled its earlier obligation to appellant.[34] Moreover, other than his aborted attempt to withdraw the bid protest, Matthews took no action to terminate the engagement with appellant until after appellees had offered to replace appellant as subcontractor.

This latter evidence, however, does not leave us with the "definite and firm convic-tion that a mistake has been committed."[35] To be sure, the proofs clashed, but it was for the District Court to resolve the conflict,[36] and we cannot say that its outcome was clearly erroneous.[37] We must, then, abide by the court's finding that appellant failed to prove that appellees caused Hartwick's alleged breach of its contract with appellant.

## III

▮▮▮ A plaintiff claiming wrongful interference with a contractual relation must also demonstrate that the defendant had knowledge of the contract, for without such awareness the latter could not *intentionally* have induced the breach.[38] The District Court found that appellees "suspected" that there was some kind of arrangement between appellant and Hartwick when they met with Matthews, the Hartwick representative, but that, in response to their questions at that time, they received assurances from Matthews that there was no problem of interference.[39] Appellant contests the accuracy of the factual finding that appellees had no more than suspicion of the existence of a contract, pointing to a response to an interrogatory in which appellees allegedly admitted knowledge of the Tuxedo-Hartwick agreement shortly after the repair-contract bidding was first

29. J.App. 29.

30. Supp.App. 30–31.

31. See Supp.App. 30–31, J.App. 23.

32. J.App. 24–25, 27, 30.

33. J.App. 28.

34. J.App. 27. The statement is not free from ambiguity, however. Matthews testified that "[i]f I would have taken the contract at all from the District I would have probably done it with Tuxedo." J.App. 27. But, uncertain as to appellant's ability to perform, Hartwick might have refused the contract offer from the District of Columbia. See J.App. 27; note 28 *supra* and accompanying text.

35. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948).

36. *Hodgson v. H. Morgan Daniel Seafoods, Inc.,* 433 F.2d 918, 920 (5th Cir. 1970); *Thomas E. Snyder Sons Co. v. Industrial Molasses Corp.,* 270 F.2d 875, 876 (7th Cir. 1959); see *United States v. United States Gypsum Co., supra* note 35, 333 U.S. at 394, 68 S.Ct. at 542, 92 L.Ed. at 766.

37. See *United States v. United States Gypsum Co., supra* note 35, 333 U.S. at 394–395, 68 S.Ct. at 542, 92 L.Ed. at 766; Fed.R.Civ.P. 52(a).

38. *Deoudes v. G. B. Macke Corp.,* 153 A.2d 309, 310 (D.C.Mun.App.1959); see *Meyer v. Washington Times Co.,* 64 App.D.C. 218, 222, 76 F.2d 988, 992, *cert. denied,* 295 U.S. 734, 55 S.Ct. 646, 79 L.Ed. 1682 (1935); *Hunter Vending Co. v. D.C. Vending Co., supra* note 17, 345 A.2d at 143.

39. *Tuxedo Contractors, Inc. v. Swindell-Dressler Co., supra* note 1, at 5–6, J.App. 11–12.

opened,[40] and to testimony by Matthews and Eric W. Pye, Matthews' assistant, that Swindell-Dressler's representative manifested awareness of the agreement during the meetings to discuss a possible alliance between Hartwick and appellees.[41]

The difficulty in appellant's position is that the District Court's resolution was not premised on appellees' total ignorance of the Tuxedo-Hartwick contract. Rather, the court held that whether or not appellees knew that such an agreement had once existed, they were entitled to rely on Matthews' assertion that a subcontract with them would not interfere with any outstanding arrangement with appellant.[42]

The court was correct both in its perception of relevant law in the District of Columbia and in its application of that law to the circumstances of this case. Twice in the last two decades the District of Columbia courts have declared that a party, when told by a prospective client that there is no conflicting contract, cannot be held to have knowledge that a binding agreement does in fact exist, at least in the absence of independent evidence of such knowledge.[43] Moreover, one of these decisions indicates that awareness that a contract once existed is insufficient if reasonable assurances are received that there can no longer be any interference with it.[44] And, despite appellant's insistence, this court's own *Meyer v. Washington Times Co.*[45] is not to the contrary. There it was held that once a defendant has actual knowledge of conflicting contractual rights, he is not excused by his reliance on his counsel's erroneous legal conclusion that the contract is no longer valid.[46] *Meyer* simply points out that misapprehension of the law will not excuse intermeddling with another's contract; in no wise does it impinge on the rule that

knowledge of the facts must be demonstrated. The District Court found, on the basis of these precedents, that appellees were not shown to have had sufficient knowledge of an ongoing Tuxedo-Hartwick contract to support the action for wrongful interference,[47] and we cannot say that this conclusion was clearly erroneous.

We are satisfied, then, that the District Court properly held that appellant failed to establish a prima facie case of tortious interference. The judgment appealed from is accordingly

*Affirmed.*

**40.** Brief for Appellant at 20–22; J.App. 20.

**41.** J.App. 24–25, 29–30.

**42.** *Tuxedo Contractors, Inc. v. Swindell-Dressler Co., supra* note 1, at 6, J.App. 12.

**43.** *Hunter Vending Co. v. D.C. Vending Co., supra* note 17, 345 A.2d at 144; *Deoudes v. G. B. Macke Corp., supra* note 38, 153 A.2d at 311.

**44.** *Deoudes v. G. B. Macke Corp., supra* note 38, 153 A.2d at 311.

**45.** *Supra* note 38.

**46.** 64 App.D.C. at 222, 76 F.2d at 992.

**47.** *Tuxedo Contractors, Inc. v. Swindell-Dressler Co., supra* note 1, at 6, J.App. 12.