James F. WOODWARD, Plaintiff,

v.

Michael DIPALERMO, et al.,
Defendants.

YELLOW BUS LINES, INC., et
al., Plaintiffs,

v.

DRIVERS, CHAUFFEURS &
HELPERS, LOCAL UNION
639, et al., Defendants.

Civ. A. Nos. 82–3154, 83–1232.

United States District Court,
District of Columbia.

Jan. 16, 1986.

**2**

Thomas G. Corcoran, Jr., Washington, D.C., for plaintiff.

Hugh J. Beins, John R. Mooney, Beins, Axelrod and Osborne, Washington, D.C., for defendants.

## MEMORANDUM

FLANNERY, District Judge.

In this case, a jury returned a verdict in favor of plaintiffs on three counts: malicious destruction of property, intentional interference with contractual relations, and abuse of process. In response to a special verdict form, the jury awarded damages of approximately $56,000 against defendant James Woodward and approximately $77,-000 against defendant union. This matter now comes before the court on defendants' motion for judgment notwithstanding the verdict, or alternatively, for modification of the judgment or a new trial. Because the verdicts are obviously against the clear weight of the evidence on the counts alleging intentional interference with contractual relations and abuse of process, the court will set aside the jury verdicts in favor of plaintiffs on those counts, and enter judgments notwithstanding the verdicts in favor of the defendants. On the count alleg-

ing malicious destruction of property, the court will modify the verdict.

## I. *Background*

Plaintiff Yellow Bus Lines Inc. ("Yellow Bus") was a Virginia corporation located in the District of Columbia and engaged in providing bus service for schools. In November of 1981, some eight employees of Yellow Bus struck for recognition of defendant Drivers, Chauffeurs & Helpers Local Union 639 ("Local 639"). Defendant Woodward was the Local 639 representative who sought to organize the employees and to establish Local 639 as their collective bargaining representative.

Though the company continued to operate throughout a four-day strike in November of 1981, plaintiffs contended that Local 639 and Woodward engaged in a systematic campaign to undermine the company. This was allegedly done during the strike by encouraging employees to commit various acts of vandalism and after the strike by instructing the employees to damage property and be late or absent. Plaintiffs alleged that Woodward threatened Yellow Bus managers that if Yellow Bus resisted unionization, then litigation and other tactics would be used to hurt Yellow Bus. The labor dispute continued after the strike, and in the summer of 1983, Yellow Bus discontinued most of its operations, alleging that defendants' activities caused its demise.

Proceedings in this court were initiated on November 4, 1982, when Woodward filed a suit alleging false arrest against D.C. police officer Michael Dipalermo, the District of Columbia, and Yellow Bus. Plaintiffs counterclaimed with federal and state claims in April of 1983 against Woodward and Local 639. By October 1984, this court had dismissed all of the federal claims, but elected to retain jurisdiction over the state claims. In May of 1984, Woodward's claim for false arrest was settled with the District of Columbia and was dismissed against Yellow Bus on Woodward's motion to dismiss.

On February 18, 1985, trial commenced on the remaining claims. On March 8,

1985, a verdict was returned in favor of plaintiffs on three counts. Defendants now contend that notwithstanding the jury's verdict, judgment should be granted defendants because there was insufficient proof on each count.

Judgment notwithstanding the verdict should be entered when "the evidence, together with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable men could not disagree on the verdict." *Coburn v. Pan American World Airways, Inc.*, 711 F.2d 339, 342 (D.C.Cir.1983). Of course, only when the probative facts are undisputed and reasonable minds can draw but one inference does the question become one of law for the court. *Aylor v. Intercounty Constr. Corp.*, 381 F.2d 930, 934 (U.S.App.D.C. 1967). An additional element in the standard of review exists in this case: by federal law, no union, agent or member of a union shall be held liable in any court for the unlawful acts of individual officers or members except upon "clear proof of actual participation in, or actual authorization of, such acts...." 29 U.S.C. § 106 (1982).

The counts and the evidence supporting them are each discussed separately.

II. *Interference with Business Contract*

■ The largest portion of the jury's award (cumulatively $100,000) was based on a finding that defendants intentionally interfered with the 1982–83 contract between Yellow Bus and the Charles Smith Jewish Day School ("JDS"). In order to prevail on this claim, there must be clear proof of a specific intent to procure the breach of a specific contract thereby causing a specific and ascertainable injury. *Tuxedo Contractors, Inc. v. Swindell–Dressler Co.*, 613 F.2d 1159 (D.C.Cir.1979).

■ The only specific contract mentioned at trial was between Yellow Bus and JDS, which was entered into in October of 1982. The Chairman of the JDS Transportation Committee, Howard Wilchins, testified without impeachment that JDS's difficulties with Yellow Bus occurred almost one year after the strike, after the contract was negotiated in October of 1982. Transcript,

at 1507, 1508. It was in January of 1983 that JDS took action to curtail the contract because of Yellow Bus' poor service. Transcript, at 1509. But even then the contract continued. It was only when the president and route manager of Yellow Bus, Paula Westgate, informed JDS of Yellow Bus' financial problems with the IRS that Wilchins terminated the contract. Transcript, at 1511; Defendants' Exhibit 22.

This court finds that there is no proof, clear or otherwise, of a causal connection between defendants' alleged conduct and the termination of the contract. The two reasons for termination of the contract were Yellow Bus' poor performance and its difficulty with the IRS. Transcript, at 921, 1513. Neither of these arose from defendants' activities. The plaintiffs also had to prove that defendants intentionally produced a breach of the contract, yet there was no evidence supporting this element.

While driver attendance may have been a problem, Paula Westgate admitted at trial that defendants were not responsible for the problems of an overwhelming majority of drivers. In fact, all of plaintiffs' witnesses admitted that they had no proof of defendants' responsibility for any of the drivers' absenteeism, tardiness, or maintenance problems. Rather, the evidence showed that the company had significant drug and alcohol problems, and had internal problems among the three owners: Paula Westgate, Maria Triggs (secretary-treasurer and office manager), and Peter McKinnon (vice president and company mechanic). In fact, McKinnon at one point attempted to destroy the company, declared he was Christ, and threatened to murder Westgate, his sister. Moreover, no evidence was introduced at trial that any of the vandalism occurred after the allegedly affected contract was executed.

There was also no evidence that defendants were responsible for the company's tax liabilities. Maria Triggs testified that the company had difficulty paying its taxes from its inception. The obligations stemmed from the company's withholding FICA and social security deductions from employees, but then not remitting the de-

ducted amounts to the federal government. This practice began June of 1981, before the union ever started negotiating with Yellow Bus.

The evidence pointed to a different cause for Yellow Bus' poor performance after the execution of the 1982–83 contract with JDS: the deterioration of the buses. Transcript, at 1110–1111, 1509. That deterioration came about from the age of the buses: Yellow Bus never bought a new bus and every model was a 1971 or earlier model. Transcript at 578–579, 586–587. By January 1983, half of the buses owned by Yellow Bus were inoperable. Transcript, at 361. After McKinnon departed in the fall of 1982 there was no one skilled enough to keep the buses running. Transcript, at 1111. This was when JDS sent several complaints to Yellow Bus. Transcript, at 234. In January of 1983, the school reduced the number of Yellow Bus routes, Transcript, at 1508–09, but the school intended to continue its contractual relationship with Yellow Bus. Transcript, at 1510. Only when JDS learned of Yellow Bus' tax liabiity to the IRS did JDS terminate the Yellow Bus contract. Transcript, at 1511–13, 1137, and 938.

Finally, there was no clear proof of the damages suffered as a consequence of the alleged interference. The award of $100,-000 is not supported by any specific evidence in the record; this single contract could not have generated such profits. First, it only generated approximately $2,232 of gross income per day for a term of 183 school days per year. Second, the contract was totally performed for the first five months and there was 80% performance for the next two months. Defendants' Exhibit 21. This only leaves lost profits from two routes for two months (*grossing* approximately $10,400) and all routes for two months (*grossing* approximately $49,250). After subtracting cost of performance, this leaves a figure nowhere near $100,000.

Plaintiffs respond that Triggs and Westgate's testimony, supported by the company's tax returns, showed that the company's profits went from approximately $3,000 the first year to approximately $20,-000 the second year. Though the buses were old, the company almost tripled its business from 1979 to 1981. After the strike, absenteeism increased due to the union activity. Plaintiffs' Exhibit 19(a). That increase led to losses of $128,517. Plaintiffs' Exhibits 17 and 19(d). Even if this were so, such damages are not tied to the contract in issue for 1982–83, and therefore cannot be used to determine compensation on that count.

Thus, plaintiffs have failed to show intentional procurement of a breach since they failed to demonstrate that defendants' actions contributed in any way to JDS's decision to terminate the contract. Further, plaintiffs' evidence provided an inadequate showing of damages from the breach. Therefore, this court must set aside the verdict on this count and grant judgment to defendants.

III. *Abuse of Process*

■ To prove abuse of process, plaintiffs had to show: (1) the issuance of legal process; (2) an ulterior purpose; (3) an improper act in the use of process; and (4) actual injury. *Jacobson v. Thrifty Paper Boxes, Inc.,* 230 A.2d 710, 711 (D.C.App.1967).

■ Element (1) was not in dispute. With regard to elements (2) and (3), plaintiffs alleged that Woodward filed his lawsuit to gain information pertaining to his impending criminal trial and that Woodward offered to withdraw the suit if the company would pay its drivers five dollars per hour. In this action, plaintiffs' burden was to show by clear proof that Woodward's suit against plaintiffs resulted in a perversion of the judicial process and achieved some end not regularly contemplated by the law. *Morowitz v. Marvel,* 423 A.2d 196, 198 (D.C.1980). Such perversion requires a gross deviation from what is considered acceptable by the community. *Epps v. Vogel,* 454 A.2d 320, 324 (D.C.App. 1982).

■ This court finds that no reasonable trier could find on this evidence that an abuse of process occurred. Woodward tes-

tified without contradiction that his attorney alone made the decisions as to when and how to pursue discovery in Woodward's case. The discovery never actually occurred, at plaintiffs' request, until *after* the criminal case was dismissed. Sufficient evidence came out at trial regarding the peculiarities of Woodward's arrest which refute any finding of "perversion" in the filing of his suit. In Woodward's civil suit for false arrest, co-defendants with Yellow Bus settled the case for more than three thousand dollars ($3,000). This is further proof that there was no basis for a jury finding that Woodward's filing of his civil suit resulted in a perversion of the judicial process.

IV. *Malicious Destruction of Property*

■ To find malicious destruction of property, the jury had to find clear proof that: (1) it was defendants that destroyed the property; (2) it was not the property of the defendants; (3) defendants destroyed the property maliciously; and (4) the property destroyed had some value. *Nichols v. United States*, 343 A.2d 336, 341 (D.C.App. 1975).

■ The jury found that these elements had been met and so awarded to Yellow Bus $1,280 against Woodward and $1,920 against Local 639. During the four-day strike in November of 1981, there was sufficient evidence to find defendant Woodward liable for damages sustained during that four-day period. There was circumstantial evidence linking Woodward to the various items introduced into evidence, such as rocks, strips of wood and a curtain rod both with nails protruding, and a beer can with nails in it. These items of physical evidence coupled with the threats by Woodward and other strikers made in Woodward's presence provide a sufficient evidentiary basis for the jury to hold Woodward responsible for the damages sustained during the period of the four-day strike. The plaintiffs failed, however, to provide clear proof that Local 639 was implicated in any way in the destruction of the property or that it ratified Woodward's actions in any manner. Therefore, the judgment against Local 639 must be set aside. Defendant Woodward's motion to set aside the verdict against Woodward on the count will be denied.

Judgment will be entered in accordance with the foregoing.

### JUDGMENT

After consideration of defendants' motion for judgment notwithstanding the verdict, or alternatively, for modification of the judgment or for a new trial, the opposition thereto, and the entire record herein, it is, by the court, this 16th day of January, 1986,

ORDERED, ADJUDGED, and DECREED that the motion for judgment notwithstanding the verdict is granted with regard to defendant Drivers, Chauffeurs & Helpers Local Union 639 and judgment is entered in favor of defendant Drivers, Chauffeurs & Helpers Local Union 639 on all counts; and it is further

ORDERED, ADJUDGED, and DECREED that the motion for judgment notwithstanding the verdict is granted with regard to defendant James Woodward on the counts of tortious interference with contractual relations and abuse of process, and judgment is entered in favor of James Woodward on those counts; and it is further

ORDERED, ADJUDGED, and DECREED that the motion for judgment nothwithstanding the verdict is denied with regard to defendant James Woodward on the count of malicious destruction of property, as is defendants' alternative motion for modification of the judgment or for a new trial; and it is further

ORDERED, ADJUDGED and DECREED that judgment be entered in favor of Yellow Bus Lines, Inc. against James Woodward in the amount of $1,280.00.