**MAJOR COMPUTER INCORPORATED, Appellant,**

v.

**ACADEMY LIFE INSURANCE COMPANY**

**Phoenix Leasing Incorporated, Appellee.**

**No. 90–5109MN.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1990.

Decided April 2, 1991.

Wayne G. Popham, Minneapolis, Minn., for appellant.

Graham Heikes, Minneapolis, Minn., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and BENSON,* Senior District Judge.

MAGILL, Circuit Judge.

Major Computer, Inc., appeals from the district court's order granting the motion of Phoenix Leasing, Inc., for summary judgment on Major's claim against Phoenix for tortious interference with contract. Major argues that genuine issues of material fact concerning its claim exist and that summary disposition was therefore improper. We agree and reverse the judgment of the district court.

---

* THE HONORABLE PAUL BENSON, Senior United States District Judge for the District of North Dakota, sitting by designation.

## I.

Major Computer and Phoenix Leasing are both brokers of computer equipment. The dispute in this case arises from Major's attempt to provide Academy Life Insurance with a NAS 9060 processor. On August 25, 1987, Major entered into a written equipment sale agreement[1] with Academy to provide a 9060 processor it had located in Europe in exchange for $335,000 in cash and other equipment. The contract provided that Academy had the right to inspect the processor and reject it if it was in unsatisfactory condition or had a poor repair record. If Academy rejected the processor before October 23, 1987, Major had the option of delivering another by that date. Academy gave Major $35,000 as a downpayment.

In early September 1987, Phoenix contacted Academy and offered to provide the company with the same type of processor. Discussions ensued between Phoenix and Academy about the processor and the possible terms of a deal. When Major learned of these discussions, on September 18 it sent Phoenix a fax letter confirming its August 25 agreement with Academy to provide the 9060 processor and alleging that Phoenix's discussions with Academy constituted interference with Major's contract. Thereafter, Phoenix contacted Academy two more times with offers to provide the processor at a price far below Major's price.

In early October 1987, Major sent one of Academy's representatives to inspect the processor in Europe. Academy rejected the processor on or about October 12, and Major continued to search for a processor for Academy before the time for performance expired. Major was unsuccessful, however, and when the deadline for performance passed on October 23, Academy informed Major it would purchase a processor elsewhere. On October 26, Academy signed a contract with Phoenix for the purchase of a processor.

Major filed suit in federal district court against both Academy and Phoenix on March 11, 1988.[2] At issue on appeal is Major's claim against Phoenix for tortious interference with contract on the theory that Phoenix's alleged below market-value offer induced Academy to reject Major's processor without justification and breach the contract. Under Minnesota law, to prevail on a claim of tortious interference with contract, a plaintiff must prove: (1) that a contract existed; (2) that the alleged tortfeasor knew of the contract; (3) that the alleged tortfeasor intentionally interfered with the contract; (4) that the interference was not justified; and (5) that damages resulted. *See Guerdon Indus., Inc. v. Rose*, 399 N.W.2d 186, 187 (Minn.Ct.App. 1987) (citing *Royal Realty Co. v. Levin*, 244 Minn. 288, 69 N.W.2d 667, 671 (1955)). Phoenix moved for summary judgment. The district court granted the motion, finding that Major had produced insufficient evidence to create genuine issues of fact with regard to the knowledge and intentional interference requirements. The district court later denied Major's motion for reconsideration.

## II.

Major argues on appeal that the district court erred in granting Phoenix's motion for summary judgment. In reviewing the district court's grant of summary judgment, our duty is to determine whether Major has submitted sufficient evidence to create genuine issues of material fact. *See Agristor Leasing v. Farrow*, 826 F.2d 732, 739 (8th Cir.1987).

### A. Knowledge

With regard to the issue of whether Phoenix knew that Academy had a contract with Major for the processor when it made an allegedly below-market offer to Academy, Major argues that substantial evidence exists that precludes summary judgment. This evidence includes the following. In early September 1987, after Major and

---

**1.** The district court assumed the validity of this contract. For purposes of this appeal, we make the same assumption.

**2.** Major and Academy have since settled Major's claims.

Academy had entered into the contract, Brian Harnett of Phoenix contacted Hal Womersley of Academy about selling Academy a NAS 9060 processor.[3] Womersley told Harnett that Academy already had "a situation working" with another company for the processor. Womersley Depo. at 32. Harnett contacted Womersley about the processor again on September 14, at which time Womersley told him that Academy "had an agreement that the legal department was reviewing." *Id.* at 34. During these conversations, Womersley never mentioned Major or the details of the agreement.

On September 17, Womersley called Harnett and told him that Academy was interested in purchasing or leasing a processor. That same day Harnett sent Academy, by fax and mail, a letter proposing terms for the sale or lease of the processor. Major learned of Phoenix's offer and on September 18 sent Phoenix a fax informing it that Major had a contract with Academy for the sale of the processor, that Phoenix's offer was substantially below the market value of the processor, and that Phoenix was interfering with its contract. Major also asked Phoenix to contact it if Phoenix wanted to discuss the matter.

Phoenix responded that day with a letter to Academy that also included a lease proposal and a copy of Major's letter. In its letter, Phoenix stated that before it could execute the lease agreement, it needed additional information about the contractual relationship that Major alleged. On September 21, Phoenix sent Academy another letter that included a proposed purchase and sale agreement.

The district court found, on these facts, that Phoenix did not know of Major's contract with Academy before it sent the September 21 letter. The court based this finding on its conclusion that to make a prima facie showing of knowledge, Major had to allege facts indicating that Academy had told Phoenix that it had a contract with Major. In reaching this conclusion, the district court relied on *Tuxedo Contractors, Inc. v. Swindell–Dressler Co.*, 613 F.2d 1159 (D.C.Cir.1979), and *American*

*Cyanamid Co. v. Elizabeth Arden Sales Corp.*, 331 F.Supp. 597 (S.D.N.Y.1971). In *Tuxedo Contractors,* the circuit court, applying District of Columbia law, held that "a party, when told by a prospective client that there is no conflicting contract, cannot be held to have knowledge that a binding agreement does in fact exist, at least in the absence of independent evidence of such knowledge." 613 F.2d at 1164 (footnote omitted). In this case, independent evidence of such knowledge does exist, namely, Major's September 18 letter to Phoenix that it had a binding contract with Academy. The district court, relying on *Elizabeth Arden,* nevertheless held that this evidence was insufficient because it came from Major. In *Elizabeth Arden,* the district court examined the nature of the duty imposed on a company after being informed by a competitor that it has a contract with the company's potential customer. 331 F.Supp. at 608. The company's only knowledge of the contract in that case came from examining the contract itself; it had no knowledge of the parties' prior negotiations. The court in *Elizabeth Arden* found that knowledge had not been shown because the alleged contract, on its face, did not appear to be binding. *Id.* Therefore, the court held that the company as a matter of law could not have had knowledge of a contract. *Id.* at 609.

For two reasons, we believe that the district court erred in requiring Major to show that Academy had told Phoenix that it had a contract with Major. First, we do not believe that *Elizabeth Arden* stands for the proposition that information from a competitor that it has a contract with a potential customer does not constitute the type of independent evidence contemplated by *Tuxedo Contractors. Elizabeth Arden* is very fact-specific, and merely holds that summary judgment is proper in tortious interference with contract claims where the alleged tortfeasor's only knowledge of the contract comes from the document itself, and the document as a matter of law is not binding.

Second, and more importantly, neither *Tuxedo Contractors* nor *Elizabeth Arden*

---

**3.** This contact appears to have been the result of a "cold call."

involved Minnesota law. Our review of Minnesota case law has revealed no decision limiting the sources of information that may be used to show that an alleged tortfeasor had knowledge of a contract; on the contrary, it appears that Minnesota takes a broad approach to this issue. In *Swaney v. Crawley*, 154 Minn. 263, 191 N.W. 583 (1923), the Minnesota Supreme Court, in reversing a grant of summary judgment against the plaintiff in a tortious interference with contract suit, stated:

> The rule is that such knowledge is an essential element of a cause of action based on defendant's willful interference with plaintiff's contractual relations with a third person.... It is not necessary to prove actual knowledge. It is enough to show that defendant had knowledge of facts which, if followed by reasonable inquiry, would have led to a complete disclosure of the contractual relations and the rights of the parties.

*Id.* 191 N.W. at 584 (citations omitted).

Here, Major has alleged that Academy informed Phoenix that Academy had an agreement with another company to obtain the processor and that Major informed Phoenix that Major was the other company. Major has therefore made a prima facie showing that Phoenix had knowledge of Major's contract with Academy, and thus a genuine issue of material fact exists that precludes summary judgment on the question of knowledge.

### B. Intentional Interference

As an alternative ground for granting summary judgment, the district court also ruled that even if Phoenix had knowledge of Major's contract with Academy, Major had presented no evidence showing that Phoenix intentionally interfered with the contract. Major contends that it submitted sufficient facts to preclude summary judgment. These facts include that Phoenix made repeated offers to provide the processor to Academy, even after having been informed of Major's contract, and that Phoenix made the offers at a price far below market value.

The mere making of an offer is not sufficient evidence of the alleged inter-ference. *See National Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 741 (Minn. 1982). The alleged below market-value nature of the offers, however, is another matter. Phoenix asserts that the $150,000 difference between its offer and Major's offer simply resulted from confusion over the value of Academy's trade-in equipment. Major claims that it was an inducement to breach. We believe that a question of fact thus exists concerning Phoenix's offer, and therefore, that summary judgment on the issue of intentional interference was improper.

### III.

For the foregoing reasons, the judgment of the district court is reversed. The district court, of course, remains free to address the other issues in this case as it sees fit.