**Johannes C. COOKE, Appellant,**

v.

**GRIFFITHS–GARCIA CORPORATION,
Appellee.**

**No. 90–CV–149.**

District of Columbia Court of Appeals.

Argued May 20, 1992.
Decided July 24, 1992.

Marc S. Moskowitz, Washington, D.C., for appellant.

Arthur F. Konopka, with whom Daniel S. Roth, Washington, D.C., was on the brief, for appellee.

Before ROGERS, Chief Judge, FERREN, Associate Judge, and KERN, Senior Judge.

ROGERS, Chief Judge:

This is an appeal from the grant of summary judgment to appellee Griffiths–Garcia Corporation on appellant Johannes C. Cooke's complaint alleging tortious interference with contractual relations and requesting the imposition of a constructive trust.[1] Appellant primarily contends that summary judgment was inappropriate because there are disputed issues of material fact. We agree, and reverse.

### I

Appellant signed a contract dated October 3, 1986,[2] with Joseph Semper and Elizabeth Trout (sellers) to purchase real property located at 1326 Girard Street, N.W. Washington, D.C. The contract contained an October 10, 1986, addendum which stated that:

> Settlement on the aforementioned property is to occur on or before November 1, 1986. During the interim period of time—October 3rd thru November 1st—said property may be marketed under the contingency that it is already "Under Contract." "Back–Up" contractors or subordinate contracts may be accepted during the aforementioned interim period. If the settlement is not made by November 1st, then the sellers, at that time may place the property back on the market on full active status. In the event after November 1st, that the Sellers obtain another bona fide offer to purchase, Sellers may accept same subject to this contract *and* Purchaser shall have 72 hours from receipt of written notice of said Secondary Contract delivered as set forth in the NOTICE paragraph hereof to either (1) remove the above contingency and provide evidence of ability to perform under the terms of this contract, or (2) to allow this contract to automatically become null and void. [Emphasis added.]

In addition, the form contract used by the parties contained a preprinted clause 9, which the parties modified by handwritten notations to read, in pertinent part:

> 9. ... This contract is contingent on the ability of Purchaser to secure or receive a commitment for the herein described financing * to take title subject to existing deeds of trust or to obtain lender's approval of any assumption, if required within forty five (45) calendar days from the date of final ratification of this contract, which commitment or approval Purchaser agrees to pursue diligently. Purchaser reserves the right to increase the cash down payment and/or to accept a modified commitment for financing.

> * * * * * *

> * *Purchaser's application for refinancing property located at 1508 U Street, N.W., Washington, D.C. 20008.* [Emphasis added] [3]

---

1. The motions judge granted appellee's motion for certification pursuant to Super.Ct.Civ.R. 54(b). Hence, we have jurisdiction. D.C.Code § 11–721(a)(1) (Repl.1989).

2. The final ratification date of the contract was on or about October. 20, 1986.

3. The wording of unrevised clause 9 appears to make the contract contingent upon the purchaser's ability to obtain the financing described in clause 3 to acquire the Girard Street property being transferred by the contract. It is not entirely clear from the alterations made by the parties whether the contract is contingent upon appellant's ability to obtain financing for property located at 1508 U Street, N.W., Washington, D.C.

While attending a business conference in late October or early November of 1986, one of the sellers, Mr. Semper, met Ms. Yasmin Griffiths Garabito, who indicated that she was interested in locating property for her company, the Griffiths–Garcia Corporation. Mr. Semper informed Ms. Garabito of the Girard Street property he owned and explained that someone had already contracted to purchase it but that the contract might have expired. He further agreed to contact his lawyer, Barry L. Leibowitz, about the matter. On November 19, 1986, Barry L. Leibowitz received a call from Dana Stebbins, Esquire, who said that she represented Griffiths–Garcia and was inquiring about the Girard Street property. Mr. Leibowitz sent Ms. Stebbins a copy of the contract and informed her that it had been terminated as a result of appellant's failure to satisfy the refinancing contingency. Finally, in November 1986, Griffiths–Garcia made an offer to purchase the property that the sellers accepted.

Appellant sued the sellers for breach of contract and also sued Griffiths–Garcia, Barry L. Leibowitz, and the sellers for tortious interference with contractual relations.[4] Griffiths–Garcia filed a motion for summary judgment on the ground that appellant's contract with the sellers was no longer binding and, hence, the property was properly conveyed pursuant to Griffiths–Garcia's contract of November 25, 1986. The motion included a statement of material facts not in dispute that was supported by excerpts from the depositions of appellant and one of the sellers, Mr. Semper, affidavits by Mr. Semper and Barry L. Leibowitz, and other documentary evidence including a copy of the appellant's contract

to purchase the Girard Street property from the sellers.[5] In its memorandum of points and authorities in support of its motion, Griffiths–Garcia argued that the undisputed material facts demonstrated that appellant's contract with the sellers was unenforceable at the time it contracted with the sellers for the same property because appellant had failed to refinance his U Street property and because the November 1, 1986, deadline for settlement had expired. Alternatively, Griffiths–Garcia argued that, assuming appellant's contract was enforceable, the undisputed facts were that Griffiths–Garcia did not intentionally induce the sellers to breach the contract because it relied on representations made by the sellers' lawyer, Barry L. Leibowitz, on November 19, 1986, that appellant's contract had expired because he had failed to satisfy the refinancing contingency.

In opposition to the motion for summary judgment, appellant argued that, under the terms of his contract[6] with the sellers, after November 1, 1986, the sellers could only accept back-up contracts to sell the Girard Street property and that the back-up contracts would be subject to the contract requirement (specifically in the October 10th addendum) that the sellers must give appellant written notice and 72 hours to cure by demonstrating his ability to perform under his contract, and that sellers had never claimed to have done so. Appellant also argued that the issue of whether Griffiths–Garcia had intentionally procured a breach of its contract with the sellers presented a jury question.[7] His statement of material facts in dispute, including that he had not received such written notice and

---

4. With respect to his claims against Griffiths–Garcia, appellant sought specific performance or the imposition of a constructive trust in addition to money damages.

5. At the time Griffiths–Garcia moved for summary judgment, another motions judge (Kramer, J.) had granted summary judgment to defendant Barry L. Leibowitz on appellant's claim of tortious interference with contractual relations. After Judge Gardner granted Griffiths–Garcia's motion for summary judgment against appellant, a third motions judge (Shuker, J.) granted appellant's motion for summary judgment against the sellers on the breach of contract

claim. The only appeal before us, pursuant to the Rule 54(b) certification, see note 1, supra, is Judge Gardner's grant of summary judgment to Griffiths–Garcia.

6. The contract consisted of the October 3, 1986, contract and its October 10, 1986, addendum.

7. Appellant also argued that the motion for summary judgment was untimely, and that the "distress" price for which the property was sold "could be viewed as evidence of the desire of [Griffiths–Garcia] to procure the breach and have the property for its own."

whether his selling rather than refinancing of his property to obtain funds for settlement was a breach of the contract,[8] was unaccompanied by citations to the record or affidavits, but during argument on the motion for summary judgment, appellant referred the trial judge to the affidavit of Anita Ashby.[9]

In granting Griffiths–Garcia's motion for summary judgment, the motions judge's order stated:

> Defendant Griffiths Garcia Corporation has moved for summary judgment and has supported its Motion with a Statement of Material Facts which are Not in Dispute and various documents, including transcripts of deposition testimony and affidavits. Plaintiff's Statement of Material Facts Remaining in Dispute, which framed no issues relevant to defendant's motion, made no reference to a pleading, deposition, answers to interrogatories or admissions on file, and did not controvert the facts as stated by the defendant, was inadequate to defeat defendant's Motion....
>
> Upon consideration of the foregoing, and it appearing to the Court that there is no material issue of fact in dispute, and defendant Griffiths Garcia Corporation is entitled to judgment as a matter of law pursuant to SCR Civ.R. 56 ... [summary judgment is granted].

## II

In reviewing a grant of summary judgment, this court reviews the record *de novo*. *Williams v. Gerstenfeld*, 514 A.2d 1172, 1175 (D.C.1986); *Holland v. Hannan*, 456 A.2d 807, 814 (D.C.1983). The standard of review on appeal is identical to the trial court's standard of review in considering the motion below and dictates that an affirmance is only appropriate where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Williams v. Gerstenfeld*, *supra*, 514 A.2d at 1176; *Swann v. Waldman*, 465 A.2d 844, 846 (D.C.1983); Super.Ct.Civ.R. 56(c). Furthermore, the "court must review the record in the light most favorable to the non-movant," resolving "any doubt as to the existence of a factual dispute" against the movant.[10] *Swann v. Waldman*, *supra*, 465 A.2d at 846. In determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as

8. Appellant's statement of material facts in dispute identified the following material facts still in dispute:

1. Whether Defendants Semper and Trout breached their contract of sale with [appellant] by failing to notify [appellant], in writing, of such new contract and providing the requisite written opportunity to provide adequate assurance of future performance.

2. Whether [appellant] breached the contract with Defendants Semper and Trout by selling rather than refinancing his other property in order to obtain funds for settlement.

3. Whether Defendant Griffiths Garcia Corporation was a Bona Fide purchaser without knowledge of [appellant]'s contract or that it had not been terminated.

4. Whether Defendant Griffiths Garcia Corporation had a right to rely upon representations of the sellers or their attorney.

9. In her affidavit, Anita Ashby, the sellers' real estate broker, stated that she had advised Mr. Semper that he had to comply with the notice provisions of appellant's contract and that she had prepared a letter for him to send to appellant. Then, in early December, 1986, she learned that the sellers had entered into another contract, and the sellers admitted to her that they had mistakenly failed to provide appellant with the 72 hour notification as required by their contract with appellant. Subsequently, Barry Leibowitz, the sellers' attorney, asked her (Ms. Ashby) how much money she would accept to stop pursuing the sellers' obligation to go to settlement with appellant, and she responded that since she had found a ready, willing and able purchaser she expected to receive her commission.

10. Although the moving party carries the initial burden proof, *Williams v. Gerstenfeld, supra*, 514 A.2d at 1176, the non-movant bears the burden of responding after "the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (citation and internal quotations omitted). Furthermore, "[t]he failure of a party opposing summary judgment to provide supported contentions of a factual dispute will result in the court's acceptance of a movant's statement of facts as undisputed absent clear support for any such contention from the record." *Williams v. Gerstenfeld, supra*, 514 A.2d at 1176.

a matter of law, the court must consider the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Super.Ct.Civ.R. 56(c); *see also Williams v. Gerstenfeld, supra,* 514 A.2d at 1176. Based on our review of the record, we conclude that summary judgment was inappropriate because there are material issues of fact in dispute and Griffiths–Garcia is not entitled to judgment as a matter of law.

■ To establish a claim of tortious interference with contractual relations, a plaintiff must prove (1) the existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of the contract's breach, and (4) damages resulting from the breach. *Altimont v. Samperton,* 374 A.2d 284, 288 (D.C.1977). Thus, Griffiths–Garcia is entitled to summary judgment if it can demonstrate appellant's inability to prove any one of the four elements. *Celotex Corp. v. Catrett, supra* note 10, 477 U.S. at 322, 106 S.Ct. at 2552 (summary judgment appropriate "against a party who fails to make a showing sufficient to establish the existence of *an element* essential to that party's case" (emphasis added)). [11] Griffiths–Garcia contends that it is entitled to judgment as a matter of law based on the lack of any genuine issue of material fact with respect to the contract's nonexistence and, alternatively, with respect to the absence of an intention by Griffiths–Garcia to procure the sellers' breach of contract. We disagree with both contentions.

■ First, the parties altered clause 9 of the preprinted contract by placing an asterisk next to the word "financing" in a clause that pertains to the financing for the Girard Street property owned by the sellers. The parties then placed another asterisk at the bottom of the page next to which they wrote "Purchaser's application for refinancing property located at 1508 U Street, N.W., Washington, D.C. 20008." It is un-

clear whether this notation was intended as a contingency or as a mere explanation of how appellant planned to obtain the remaining down payment for the property. If the latter is true, then the notation would not be a contingency at all. But even if it were a contingency, the contract still would have been enforceable at the time Griffiths–Garcia signed its contract with the sellers. Although the Rapid Mortgage Company sent appellant a letter dated November 18, 1992, indicating that his application for a residential loan had been denied, the terms of clause 9 specified that appellant had 45 days from the contract's final ratification date to obtain the refinancing in question. Since the final ratification date of appellant's contract with the sellers was on or about October 20, 1986, appellant would still have been able to try to obtain financing elsewhere until on or about December 4, 1986. The record does not show that Griffiths–Garcia signed its contract with the sellers after December 4, 1986. In fact, an affidavit by Barry L. Leibowitz, the sellers' lawyer at the time, suggests that the sellers had accepted Griffiths–Garcia's contract shortly after November 25, 1986. Griffiths–Garcia's statement of material facts not in dispute states that it submitted a contract to the sellers on November 25, 1986, and the briefs of both appellant and Griffiths–Garcia state that the contract was signed in November 1986.

■ Second, Griffiths–Garcia also failed to demonstrate that appellant's contract terminated when appellant failed to settle by November 1, 1986. The clear language of the contract (specifically, the addendum) refutes this contention because it delineates various rights and obligations of both parties after November 1, 1986. It provides that after November 1, 1986, "the sellers ... may place the property back on the market on full active status," and that

---

11. Griffiths–Garcia also contends that summary judgment should be approved because appellant "failed to place any evidence before the court to contravene the evidence of the moving party." However, as Griffiths–Garcia admits, the burden of proof shifts to the opposing party *"only*

*after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *Celotex Corp. v. Catrett, supra* note 10, 477 U.S. at 321, 106 S.Ct. at 2552 (emphasis in original).

"the sellers may accept [a bona fide offer] subject to this contract." It also requires the sellers to give appellant written notice and "72 hours from receipt of written notice ... to ... remove the above contingency and provide evidence of ability to perform." Thus, after November 1, 1986, the sellers were required to notify appellant in writing of the Griffiths–Garcia contract and afford him 72 hours to cure any deficiency. There is no other way to read the parties' contract. Griffiths–Garcia never maintained in its pursuit of summary judgment that appellant had received written notice from the sellers of the Griffiths–Garcia contract, but only contended that settlement had not occurred by November 1, 1986.[12] Hence, in view of the plain language of the contract, to which appellant referred in his written and oral opposition to summary judgment, the trial judge could not properly conclude that appellant no longer had a contract with the sellers when Griffiths–Garcia entered into its contract with the sellers.[13] *Holland v. Hannan,* supra, 456 A.2d at 815 (D.C.1983) (summary judgment inappropriate where language of contract does not unambiguously support movant's construction).

Finally, Griffiths–Garcia's contention that summary judgment was appropriate based on the lack of any genuine issue of fact on whether it intentionally procured a breach of appellant's contract with the sellers also fails. To support its contention, Griffiths–Garcia relies on *Deoudes v. G.B. Macke Corp.,* 153 A.2d 309 (D.C.1959). In *Deoudes v. G.B. Macke Corp., supra,* a vending machine company entered into a contract with a restaurant operator under which the company acquired exclusive rights to place its cigarette vending machines in two restaurants. *Id.* at 310. When the restaurant owner removed the machines and signed a similar contract with a second vending machine company,

the first vending company sued the second for tortious interference with contractual relations and, following a trial, received a judgment for damages. *Id.* at 309–10. This court reversed because the trial court's findings of no actual malice or willful or wanton disregard by the second company, which implied that the second company "did not know whether the [first company's] contract was still in existence and in good faith relied on [the owner's] representation that [the first company's] contract had expired," could not support the necessary legal conclusion that the second company "intentionally caused [the owner] to break the contract." *Id.* at 311.

While Griffiths–Garcia analogizes its situation to that of the second vending company in *Deoudes,* and maintains that it likewise did not intentionally induce the sellers to breach their contract with appellant, *Deoudes* is not directly on point because it did not involve the review of a grant of summary judgment. *Id.* The issue on appeal in *Deoudes* was whether the factual findings supported the necessary legal conclusion that the second vending company had intentionally induced the restaurant owner to breach his contract with the first vending company. By contrast, the issue in the instant case is whether there is any genuine issue of material fact on the issue of whether Griffiths–Garcia intentionally procured a breach of appellant's contract with the sellers. Summary judgment is inappropriate where questions of intent are at issue. *See White v. Luber,* 144 A.2d 774, 776 (1958) (summary judgment inappropriate "when such factors as motive, intent and conscience were 'necessary instruments in obtaining truth'" (quoting *Subin v. Goldsmith,* 224 F.2d 753 (2nd Cir.), *cert. denied,* 350 U.S. 883, 76 S.Ct. 136, 100 L.Ed. 779 (1955))).

---

**12.** In its reply to appellant's opposition to summary judgment, Griffiths–Garcia asserted that whether the sellers gave appellant notice was not a material fact since its contract with the sellers was not a back-up contract to their contract with appellant under Griffiths–Garcia's interpretation of appellant's contract.

**13.** Since the evidence is to be viewed most favorably to the non-movant, the absence of supporting affidavits to appellant's statement of material facts in dispute does not defeat his contention that the motions judge erred in granting summary judgment to Griffiths–Garcia.

**1258**

 The fact that Griffiths–Garcia maintains that it relied on the representations of the sellers' attorney about the status of appellant's contract with the sellers does not necessarily insulate it from liability because its reliance must be reasonable. *Deoudes v. G.B. Macke Corp., supra,* 153 A.2d at 311. Barry L. Leibowitz's affidavit, cited in Griffiths–Garcia's statement of material facts not in dispute, states that he informed a representative of Griffiths–Garcia that appellant's contract with the sellers had expired because appellant had failed to obtain refinancing. However, this representation was clearly incorrect because the contract gave appellant until on or about December 4, 1986, to fulfill this contingency clause. In his affidavit, Barry L. Leibowitz also stated that he sent a copy of the sellers contract with appellant to Griffiths–Garcia's legal representative. Thus, Griffiths–Garcia's legal representative had access to appellant's contract with the sellers, and the plain wording of the contract indicated that Barry L. Leibowitz' representation on November 19, 1986, that appellant's contract had expired, was incorrect. Therefore, reasonable minds could differ on whether Griffiths–Garcia knew that Barry L. Leibowitz' representation was incorrect when it signed its contract with the sellers.[14] In addition, the affidavit of Anita Ashby, the seller's broker, indicates that she advised the sellers in late October, 1986, that appellant was ready to meet his obligation under the contract.

Mindful of the requirement that the record be viewed in the light most favorable to the nonmoving party, *Swann v. Waldman, supra,* 465 A.2d at 846, we hold that there is a genuine issue of material fact with respect to the reasonableness of Griffiths–Garcia's reliance on Barry L. Leibowitz' representation, and, thus, with its intentions, or lack thereof, to procure a breach of appellant's contract with the sellers.

Accordingly, we reverse the grant of summary judgment, and we remand the case for further proceedings.[15]

---

14. By contrast, the facts of *Deoudes v. G.B. Macke Corp., supra,* do not indicate that the second vending machine company's legal representative *ever saw* the actual written contract between the first vending machine company and the restaurant owner from which it might have had an opportunity to confirm that the contract was still enforceable. 144 A.2d at 311.

15. Because of our disposition, we do not address appellant's second contention that summary judgment for Griffiths–Garcia was inappropriate because it allegedly conflicted with a subsequent summary judgment in favor of appellant against the sellers.