**UNITED STATES of America, Plaintiff,**

**v.**

**Cyrus YONAN, Jr., Defendant.**

**No. 84 CR 246.**

United States District Court,
N.D. Illinois, E.D.

Dec. 2, 1985.

Anton R. Valukas, U.S. Atty., Michele E. Smith, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Edward M. Genson, Thomas A. Corfman, Genson & Steinback, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On November 27, 1985 the United States Attorney obtained from the grand jury its fifth essay—the fourth superseding indictment (simply the "Indictment," except where it is necessary to distinguish the current version from prior versions)—at leveling multiple charges against Cyrus Yonan, Jr. ("Yonan"). This latest return to the drawing board was directed at correcting obvious drafting errors in the third superseding indictment,[1] which had itself made one important substantive change from the second superseding indictment, the version dealt with in this Court's November 15, 1985 memorandum opinion and order (the "Opinion," 622 F.Supp. 721).

For the same reasons discussed in the Opinion, *id.* at 722–26, Indictment Count Two (identical to Count One of the second superseding indictment) is dismissed. Indictment Count Three (identical to Count Two of the second superseding indictment) survives under the analysis in the Opinion, *id.* at 727–28. . Mail fraud Indictment Counts Four through Eleven also stand, for the reasons stated in the Opinion, *id.* at 729–34 in dealing with corresponding Counts Three through Ten of the second superseding indictment.

That leaves for fresh consideration only Indictment Count One, which reflects a wholly new theory[2] for Yonan's conviction under 18 U.S.C. § 1962(c), one of the provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.[3] According to new Count One ¶ 3(b), the RICO "enterprise" (see Section 1961(4)) was the Office of the Cook County State's Attorney (the "State's Attorney's Office"). Count One ¶ 5 charges Yonan with the same acts of bribery re-

---

1. As the Opinion at 15 reflects, Counts Three through Ten in the second superseding indictment were mail fraud charges. All except the first of those counts followed the customary drafting form of incorporating by reference (rather than repeating in haec verba) the general allegations of Count Three. Because the third superseding indictment then shoehorned in a new Count One (the same as the current Count One, of which more later), the unchanged mail fraud charges were moved up in the numbering—they became Counts Four through Eleven. Yet through a drafting oversight the last seven of those counts continued to incorporate by reference "Count Three" (even though that had become a RICO charge in the third superseding indictment, whereas it had earlier been a mail fraud charge), rather than properly changing that reference to "Count Four" to conform to the renumbering in the third superseding indictment. That mistake was corrected in the Indictment, which also took the occasion to cure an omission that was identified in the Opinion at 26 n. 12 but was nevertheless perpetuated in the third superseding indictment.

2. Both Judge Thomas McMillen (to whose calendar this case was originally assigned) and this Court have entered orders properly excluding time for purposes of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, and those orders prevent this case from coming even close to posing a time problem under the statute. All the same, there is something disquieting about such continuing and repeated efforts by the prosecutor to restate criminal charges based on the identical conduct that was addressed by the United States Attorney and the grand jury from the very beginning of this case. Both a defendant and the public have a right to expect criminal charges to proceed to trial promptly. And though that is universally true, it may be even more so in high-profile cases (Yonan's 1984 indictment grew out of the original Greylord investigation). In any event, this Court expects to push the case to an early trial.

3. All further RICO citations will take the form "Section—," with the numbering drawn from Title 18 rather than RICO's internal numbering.

ferred to in the Opinion, 622 F.Supp. at 728, all involving payments and offers of payment to Terrence Hake ("Hake")—an Assistant State's Attorney whom Yonan believed to be corrupt but who turned out to be an undercover agent—to fix criminal cases involving Yonan's clients. As Count One ¶ 3(c) would have it, that renders Yonan "associated with" the State's Attorney's Office enterprise—a necessary ingredient of any charge under Section 1962(c).

■ It is by now familiar lore that proper pleading of a Section 1962(c) charge requires the allegation that a "person" conducted or participated in the affairs of an "enterprise," each of the quotation-marked terms being an entity distinct from the other. *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 400–02 (7th Cir.1984) (citing with approval this Court's decision in *Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20, 23–24 (N.D.Ill.1982)), *aff'd per curiam*, —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Further, Section 1962(c) in terms attaches criminal responsibility only to a person "employed by or associated with" an enterprise.

Yonan (the "person") was obviously not "employed by" the State's Attorney's Office (the charged "enterprise"). Thus he must perforce have been "associated with" that office if Count One is to stand. Unfortunately, RICO's definitional Section 1961 does not prescribe the content of "associated with," nor is the legislative history very helpful. But a few basic propositions will serve to put Yonan's situation in proper perspective.

■ RICO's very sentence structure and normal use of the English language demonstrate that "associated with" is a concept wholly distinct from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."[4] In that respect *United States v. Forsythe*, 560 F.2d 1127, 1136 (3d Cir.1977), on which the government relies in part, simply misreads the statute. In RICO terms the phrase "associated with," like "employed by," defines a status relationship between the person and the enterprise. Acts of "racketeering" by the "person," though the rest of Section 1962(c) says they must have an effect on the conduct of the enterprise's affairs, do not themselves provide the status nexus between the racketeer and the enterprise. *United States v. Bledsoe*, 674 F.2d 647, 663 (8th Cir.1982). Were it otherwise, robbing a bank twice would cause the robber to be "associated with" the bank. Just as the enterprise itself must amount to more than a sheer pattern of racketeering activity, *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981) ("enterprise" is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit"), one does not "associate with" an enterprise by committing crimes *against* it.

In part, Congress' use of the term "associated with" (and not simply the term "employed by") shows an intention to permit criminal charges against persons outside the organizational structure of an enterprise as well as within it.[5] *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir.), *cert.*

---

**4.** Had Congress meant simply to equate the terms "employed by or associated with" with an offender's conduct or participation in the conduct of the enterprise's affairs, the quoted language could have been omitted entirely. Section 1962(c) could have made it unlawful for "any person to conduct or participate ... in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." To give any content to the "employed by or associated with" language, it must be given the status-defining meaning next expressed in the text, while the "conduct or participate" clause defines what the defendant must *do* to or with the enterprise.

**5.** One other obvious purpose stems from Section 1961(4)'s sweeping definition of "enterprise" to embrace not only conventional legal entities but also such less structured concepts as an association of persons. If Section 1962(c) had spoken only of persons "employed by" the enterprise, the anomalous result could have been that employees of such an association could be indicted, while the principals—the associates themselves—might not.

*denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *United States v. Bright,* 630 F.2d 804, 830 (5th Cir.1980) (citing *Elliott*); *United States v. Lee Stoller Enterprises,* 652 F.2d 1313, 1320–21 (7th Cir.1980) (en banc) (citing *Bright*), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 615 (1981). But that does not answer what quality of "association" is required to permit the outside person to be swept into the criminal net.

RICO, it should be remembered, is directed against the acquisition and conduct of "enterprises" through specified types of criminal behavior by persons directly linked to those enterprises. Sections 1962(a) and (b) address the acquisition of interests in, and the maintenance of, enterprises through racketeering (Section 1962(b)) or through funds obtained from racketeering (Section 1962(a)). Section 1962(c) addresses the conduct of enterprises through racketeering activity by specified categories of persons.[6] Thus a prime instance of the sort of non-employee target Congress aimed at through RICO is the control of a corporate enterprise's activities by a majority shareholder—a "person" who is not necessarily an employee but who is clearly "associated with" the enterprise.[7]

■ Subcontractors, accountants, lawyers and consultants all may be "associated with" an enterprise, see *Schacht v. Brown,* 711 F.2d 1343, 1360 (7th Cir.), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983) though they are not its employees.[8] And as n. 5 illustrates, if the enterprise is simply what Section 1961(4) calls "any union or group of individuals associated in fact although not a legal entity," logic as well as normal language usage tells us each of those individuals is ordinarily "associated with" the enterprise (whether or not its employee). Membership in a union or a club is an example, as well as membership in a criminal organization of the sort described in *Turkette.*

Whether inside or outside the enterprise's organizational structure, all of the "associates" given above as examples share two characteristics:

    1. All have a relationship with the enterprise characterized by a stake or interest in the goals of the enterprise—legitimate or illegitimate.

**6.** See 116 Cong.Rec. 602 (1970) (emphasis added) (remarks of Sen. Hruska, co-sponsor of the bill):

> Stated simply, this legislation makes it unlawful for any person *to acquire an interest in* or *establish* an enterprise engaged in interstate commerce *by the use of income derived from "a pattern of racketeering activity"* .... It would also prohibit any person from *acquiring or maintaining any interest or control of any such enterprise by a pattern of racketeering activity,* and likewise prohibit *any person employed by or associated with such an enterprise* from *conducting the enterprise's affairs by a pattern of racketeering activity.*

See also *id.* at 607 (remarks of Sen. Byrd) (RICO makes it unlawful "to acquire or operate such businesses by racketeering methods"); *id.* at 35,- 193 (remarks of Cong. Poff) (similar); *id.* at 35,197 (remarks of Cong. McCulloch) (similar); *id.* at 35,304 (remarks of Cong. Railsback) (similar). House Judiciary Committee Chairman Celler expressed a somewhat narrower view of what RICO was about (*id.* at 35,196) (emphasis added):

> [RICO] proscribes the acquisition, maintenance or control of any interest in a business engaged in commerce through a pattern of racketeering activity.... *The conduct of the affairs of a business by a person acting in a managerial capacity,* through racketeering activity[,] is also proscribed.

Thus in Congressman Celler's view a Section 1962(c) "person" would have to be someone more than a mere employee, despite the simple "employed by" language of Section 1962(c). This Court is not prepared to embrace that restriction (see, e.g., *Parnes,* 548 F.Supp. at 23–24), but that issue need not be faced for current purposes (see also n. 10).

**7.** That example illustrates the utility of "associated with" in the more conventional legal-entity type of "enterprise" (such as a corporation) as well as the more amorphous "enterprise" (see n. 5).

**8.** Of course many such persons may also be said to be "employed by" an enterprise in common speech (if not perhaps in technical parlance). See *Forsythe,* 560 F.2d at 1136 (constables and magistrates who regularly solicited and received bribes from a bail bond agency might be viewed as "employees" of that agency, for in essence they were on its payroll).

2. All are associated with the enterprise as such, not merely with some other individual who is "employed by or associated with" the enterprise but is off on a frolic and detour of his or her own.

Both those characteristics are in a sense tautological. But that is due in large part to their obviousness. And given the government's myopia on this score, it is necessary to state them in that form to show exactly why Yonan's connections with *Hake* did not associate Yonan with the *State's Attorney's Office.*

There is a sharp distinction between the Yonan-Hake association and the situations that have been held to present "associated with" relationships in the cases the government has cited. In *Bright,* for example, Bright operated a bail bond agency involved in bribing the county sheriff. Bright was held a person "associated with" the enterprise of the County Sheriff's Office, 630 F.2d at 830. In like fashion, the sheriff's bagman and payoff collectors in his corrupt scheme were held "associated with" the enterprise, *id.* at 831–34. Of course the goals of a county sheriff's office are not supposed to be corruption of justice. But the involvement of the head of the office—the sheriff himself—as bribe-taker made his goals those of his own office qua "enterprise." Thus Bright shared the purpose of the charged enterprise, though Bright's own purpose (and that of the entrepreneur himself, the sheriff) was to subvert the goal the enterprise *should* have had. And because Bright and his co-defendants worked for the man who directed and set the policy of the enterprise, they were related to the enterprise as a whole, at the management level.

Yonan's case is critically different. Here the State's Attorney's Office itself is not alleged to have been corrupt or to have had a corrupt goal. Quite to the contrary, Yonan's goal was to undermine the Office's— the enterprise's—actual legitimate goals. *Hake* had (that is, pretended to have) a corrupt goal, but that was his own goal and not his employer's. Nor was Hake a policy-maker of the State's Attorney's Office as "enterprise." His own (feigned) corruption is not alleged to have infected anyone else. So Yonan was not associated through Hake with anyone but Hake.

*Forsythe* and *Lee Stoller Enterprises* are analytically identical to *Bright.* In each case the goal of the enterprise identified in the indictment—in *Forsythe* a bail bond agency and in *Lee Stoller Enterprises* a county sheriff's office—was corrupt, though in a perfect world it would not have been. And in each case the defendant—the person associated with the enterprise—shared that goal. In each case the defendant dealt with management-level people at the enterprise, so it could be said the defendant dealt with the enterprise as a whole, and not merely with a corrupt employee out to torpedo the enterprise's actual activities as set by its leader(s).

Finally, *United States v. Starnes,* 644 F.2d 673 (7th Cir.1981), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981), not cited by the parties, illustrates the same two principles in a context not involving official corruption. There Starnes, president of Tri-No Corporation, hired Roland to "torch" the building that housed Tri-No's operations. Our Court of Appeals focused its discussion principally on the question whether Roland, the arsonist, "participat[ed], directly or indirectly, in the conduct of the enterprise's affairs" by burning its headquarters, 644 F.2d at 679. But it is also clear (as it had to be for Roland's conviction) Roland was "associated with" Tri-No Corporation. Though Tri-No had been a legitimate business, its president had determined it was better off in cinders. Thus Roland shared the twisted goal that had been set for the enterprise, rather than working against it. Toward that end he dealt with the enterprise's policy-maker directly—with the enterprise as such, not (say) with a disgruntled shipping clerk whose purpose was revenge against Tri-No.

All the cases thus reflect the sense (and common sense) that must be ascribed to the "associated with" concept in Section 1962(c).[9] And that sense, and common sense, are flouted by Count One. Hake was himself only an employee of the State's Attorney's Office. Even had he been corrupt (as Yonan allegedly believed him to be), an association with him was not an association with the State's Attorney's Office—the "enterprise."[10] It was an association *against* that enterprise.

In sum, the government's latest attempt to frame a Section 1962(c) indictment against Yonan is a failure. Now that pleaders have finally understood Section 1962(c) requires the allegation of an "enterprise" distinct from the "person"-defendant, it is time they focused more carefully on the statutorily required relationship between the person and the enterprise. Merely picking an enterprise out of a hat will not do.

### Conclusion

Counts One and Two of the Indictment are dismissed, but the other nine counts remain. Speedy trial concerns dictate an early decision by the government as to whether it is prepared to go to trial on those counts. Status for this case is next set for December 16, 1985 at 9:00 a.m., at which time the government will be required to advise this Court of its determination.

9. It is worth observing the reading of "associated with" reflected in this opinion conforms to *all* the legislative statements cited in n.6, including the somewhat divergent expression by Congressman Celler.

10. As Section 1962(c) is drafted, the lack of an "associated with" relationship may screen out potential RICO defendants in a somewhat different way from the "employed by" situation. For example, Hake himself was employed by the State's Attorney's Office. Had he actually been corrupt, he could have been a "person" and the State's Attorney's Office the "enterprise," even though he were working against the policy of the office. For him to have been charged and convicted under RICO, the next elements of the crime would have had to come into play: Hake would have to conduct, or participate in the conduct of, the enterprise's affairs through a

pattern of racketeering activity. See *United States v. Grzywacz,* 603 F.2d 682, 685–87 (7th Cir.1979) (upholding, without discussing the "employed by or associated with" issue, the Section 1962(c) conviction of three corrupt policemen whose enterprise was the county police department), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2152, 64 L.Ed.2d 788 (1980). But the fact Hake (if actually crooked) might have been convicted for his connection with the enterprise alleged by the government does not at all mean anyone associated with him in his scheme would by extension be "associated with" his employer in Section 1962(c) terms. After all, Section 1962(c) speaks only of a "person employed by or associated with any enterprise," not of a "person associated with any person employed by any enterprise."