839 F.2d 782
 127 L.R.R.M. (BNA) 2607, 268 U.S.App.D.C.
103, 56 USLW 2460,
108 Lab.Cas. P 10,311, 10 Fed.R.Serv.3d 423,
RICO Bus.Disp.Guide 6864
 YELLOW BUS LINES, INC., Appellant
v.
DRIVERS, CHAUFFEURS & HELPERS LOCAL UNION 639, et al.
James F. WOODWARD
v.
Michael DiPALERMO, et al.
Maria Triggs, Secretary/Treasurer, Yellow Bus Lines, et al.,
Appellants.
 Nos. 86-5135, 86-5136.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 15, 1987.
Decided Feb. 12, 1988.
Rehearing Denied May 6, 1988.
 
 Appeals from the United States District Court for the District of Columbia (Civil Action Nos. 83-01232 and 82-03154).
 Thomas G. Corcoran, Jr., Washington, D.C., for appellant.
 John R. Mooney, with whom Hugh J. Beins, Washington, D.C., was on the brief, for appellees.
 Before WALD, Chief Judge, MIKVA and EDWARDS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge MIKVA.
 Concurring statement filed by Circuit Judge HARRY I. EDWARDS.
 MIKVA, Circuit Judge:
 
 
 1
 This litigation arises from events surrounding a four day strike by employees of Yellow Bus Lines, Inc. for recognition by the company of a union local, Drivers, Chauffeurs, and Helpers Local 639 ("Local 639" or "the Local"), as their collective bargaining representative. Believing that the union had engaged in a campaign of violence to sabotage the company and obtain labor concessions, Yellow Bus and three of its officers ("Yellow Bus" or "appellants") filed claims and counterclaims in these consolidated cases against the Local and its business agent and trustee James Woodward, accusing them of engaging in a "pattern of racketeering activity" in violation of Sec. 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961 et seq. (1982) and alleging violations of tort law.
 
 
 2
 After the judge dismissed the RICO charges, the remaining counts were tried before a jury. The jury awarded damages against the Local and Woodward on three tort claims. Yellow Bus appeals from the district court judge's partial grant of appellees' motion for judgment notwithstanding the verdict (JNOV) setting aside each verdict except that against Woodward for malicious destruction of property. Appellants also challenge various pre-trial orders, including denial of leave to amend the RICO complaint and dismissal of the RICO counts.
 
 
 3
 Because we find that the RICO dismissal and the denial of leave to amend were error, we reverse and remand on that ground. For reasons set forth below, we also vacate the judgment notwithstanding the verdict against the Local on malicious destruction of property. In all other respects, we affirm the judgment of the district court.
 
 I. BACKGROUND
 
 4
 In 1979, appellants Maria Triggs, Paula Westgate, and her brother Peter McKinnon created Yellow Bus Lines, Inc., a Virginia corporation located and operated in the District of Columbia. In October 1981, a number of Yellow bus employees met with Local 639 business director Woodward for the purpose of organizing the company employees. After Yellow Bus refused to recognize and bargain with the union, a strike was called on November 9, 1981.
 
 
 5
 According to Yellow Bus, the strike was marred by threats and violence against company property by Woodward and other strikers. As a result of one incident in which Woodward allegedly threatened to "burn the company buses", Ms. Triggs called the police. Woodward was briefly arrested and charged in a three-count felony indictment for threatening to damage the buses.
 
 
 6
 Proceedings in the court below were initiated one year after the strike, when Woodward filed suit on November 4, 1982 against District of Columbia police officer Michael DiPalermo, the city, and three officers of Yellow Bus alleging abuse of process and false arrest. The defendants in that action, Woodward v. DiPalermo, et al., Civ. No. 82-3154, then counterclaimed, alleging malicious destruction of property and intentional interference with contract as well as intentional infliction of emotional distress. They also charged Woodward and the Local with abuse of process, claiming that Woodward filed his false arrest claim to discover information essential to his criminal defense and to induce Yellow Bus to agree to the Local's proposed contract terms. In April 1983, Yellow Bus filed additional charges against Woodward and the Local alleging violations of RICO, 18 U.S.C. Secs. 1962(c) and (d). By October 1984, the district court had dismissed all the federal claims, but elected to retain jurisdiction over the tort claims. In May 1984, Woodward's false arrest claim was dismissed after Woodward reached a settlement with the District of Columbia. The trial on the remaining counts began in February 1985, and the jury returned a verdict in favor of appellants on three counts, awarding a total of $133,200. Yellow Bus was awarded $1,280 against Woodward and $1,920 against Local 639 for malicious destruction of property, and $40,000 against Woodward and $60,000 against the Local for intentional interference with contractual relations. The jury also awarded the company and its three officers $15,000 against Woodward and $15,000 against the Local for abuse of process. In March 1985, the court entered judgment for these amounts. In January 1986, the court partially granted appellees' JNOV motion and set aside all except the $1,280 judgment against Woodward for malicious destruction of property.
 
 
 7
 II. JNOV ON MALICIOUS DESTRUCTION OF PROPERTY
 
 
 8
 In support of its claim of malicious destruction, Yellow Bus introduced testimony of damage to vehicles observed by employees at the strike site. Although no employee saw Woodward participate directly in vandalism, the court found that "circumstantial" evidence linking Woodward to property damage, coupled with threats made by Woodward and other strikers, was sufficient to support the jury determination that Woodward was liable for the property damage. The court decided, however, that the evidence against the Local was insufficient to support liability under Sec. 6 of the Norris-LaGuardia Act, which requires clear proof of union responsibility for the acts of its agents.
 
 
 9
 Section 6 of the Norris-LaGuardia Act states that
 
 
 10
 No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.
 
 
 11
 29 U.S.C. Sec. 106 (1982). Section 6 applies in "federal court adjudications of state tort claims arising out of labor disputes." United Mine Workers v. Gibbs, 383 U.S. 715, 737, 86 S.Ct. 1130, 1144, 16 L.Ed.2d 218 (1966). See also Ramsey v. United Mine Workers, 401 U.S. 302, 310, 91 S.Ct. 658, 663, 28 L.Ed.2d 64 (1970). In order to support a grant of the motion for JNOV, the trial judge must conclude that a reasonable jury could not have found "clear proof" of the union's participation or authorization. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2512-13, 91 L.Ed.2d 202 (1986). After reviewing the record and taking all justifiable inferences in favor of appellants, we conclude that a reasonable jury could have found "clear proof" of union ratification or authorization of Woodward's actions, and that the damage award against the Local on this count should not have been set aside.
 
 
 12
 In evaluating whether Local 639 "ratified" the destructive acts ascribed to Woodward "after actual knowledge" of their perpetration, the district court failed to take into account a crucial piece of evidence concerning the Local's awareness of the events which transpired during the Yellow Bus strike. At trial, counsel for Yellow Bus introduced without objection a letter sent by Yellow Bus and received by Mr. George, President of Teamsters Local 639, on November 10, 1981. This letter described with particularity "numerous incidents of threats, violence, property damage, and verbal abuse" by Woodward and other strike participants. Following this communication, the record shows that business continued as usual at the Yellow Bus strike and Mr. Woodward remained on-site as the Local's man in charge. There is nothing in the record to indicate that the union took any action to investigate the allegations or to curb any excesses of Woodward or the strikers.
 
 
 13
 In the circumstances of this case, the combination of the Local's notification of events early in the strike, coupled with the complete failure to act on that knowledge, fulfills the requirement of "proof, either that the union approved the violence which occurred, or that it participated actively or by knowing tolerance in further acts which were in themselves actionable under state law." Gibbs, 383 U.S. at 739, 86 S.Ct. at 1146. A union may "ratify" or "authorize" without going so far as to openly encourage or embrace the tactics of its official representative. Section 6 does not impose a requirement of such formal authorization by the union. See James R. Snyder Co. v. Edward Rose & Sons, Inc., 546 F.2d 206 (6th Cir.1976). Rather, "proof of authorization or ratification can be based upon circumstantial evidence, but that proof, although circumstantial, must nevertheless be clear." Id. at 209. From the Local's apparent lack of concern with the violence brought to its attention, the jury plausibly could conclude that the Local "knowingly tolerated" this state of affairs. No more is required to support a finding of ratification. In short, there was clear proof that the other officials at the Local ratified by knowing tolerance those acts of violence in which Woodward was shown to have participated.
 
 
 14
 Moreover, specific proof of "knowing tolerance" by other union officials was not required in order to hold the Local directly responsible for Woodward's actions because Woodward was clothed with plenary authority to direct the strike on behalf of the union. Section 6 was meant to "change[ ] the substantive law of agency," Brotherhood of Carpenters v. United States, 330 U.S. 395, 403, 67 S.Ct. 775, 780, 91 L.Ed. 973 (1947), by nullifying the doctrine of respondeat superior in those cases where a union member or official has not been charged with directing union activities. That provision does not serve to absolve a union of ordinary responsibility for actions undertaken by officers exercising authoritative responsibility. For example, in Charles D. Bonanno Linen Service, Inc. v. McCarthy, 708 F.2d 1, 11 (1st Cir), cert. denied, 464 U.S. 936, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983), evidence that a union representative "with the power and authority" to orchestrate a strike and discipline participants took no action to curb strike violence was held sufficient to establish liability of a union local. As the Bonanno court observed, "the Supreme Court has held that the union need do no more than authorize an agent's general activity." Id. at 12 (citing Brotherhood of Carpenters v. United States, 330 U.S. at 410, 67 S.Ct. at 783 ("The grant of authority to an officer of a union to negotiate agreements with employers * * * may well be sufficient to make the union liable."))
 
 
 15
 As the union's authorized representative, Woodward was empowered to conduct the union's business at Yellow Bus. Since Woodward was the designated union presence on the site authorized to run the strike, his acts can be considered the union's acts for which the union is responsible. See United Mine Workers of America v. Meadow Creek Coal Co., 263 F.2d 52, 63 (6th Cir.), cert. denied, 359 U.S. 1013, 79 S.Ct. 1149, 3 L.Ed.2d 1038 (1959) (high union official in charge of a strike and directly involved in its unlawful activity "was high enough in the hierarchy * * * to render [the] organization liable for the consequences of conduct of its members under his general leadership"). See also Kayser-Roth Corp. v. Textile Workers Union of America, 479 F.2d 524, 527-28 (6th Cir.), cert. denied, 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973) (acts of high officials in violation of state law deemed "participation" for purposes of union liability under Sec. 6).
 
 
 16
 In sum, "[i]f a union delegates to an agent unrestricted authority going beyond the norms of union conduct, Sec. 6 does not immunize it from liability for his illegal acts. Similarly, if it continues him in a previous position of high responsibility after knowledge of his illegal activities, Sec. 6 affords no shelter." Harlem River Consumers Coop., Inc. v. Associated Grocers of Harlem, Inc., 450 F.2d 271, 273-74 (2d Cir.1971) (citing Carpenters, 330 U.S. at 409-10, 67 S.Ct. at 783). The record supports that Local 639 both knowingly tolerated Woodward's acts and fully authorized Woodward to act. In either case, the jury verdict against the union comports with statutory requirements and should be upheld.
 
 
 17
 III. JNOV ON ABUSE OF PROCESS AND INTENTIONAL INTERFERENCE
 
 WITH CONTRACT
 
 18
 The jury awarded a total of $100,000 against Woodward and the Local for intentional interference with a contract between Yellow Bus and the Charles Smith Jewish Day School ("JDS"). The district court set aside this verdict, finding that Yellow Bus had failed to offer proof, "clear or otherwise", of causal connection between appellees' alleged conduct and the decision by JDS to terminate the contract. See Tuxedo Contractors, Inc. v. Swindell-Dressler Co., 613 F.2d 1159, 1160 (D.C.Cir.1979) (complainant must prove "contract, knowledge of contract, intentional procurement of its breach by defendant, and damages resulting from breach"). We agree with the district court and uphold its judgment notwithstanding the verdict.
 
 
 19
 First, Yellow Bus offered no evidence whatsoever of the Local's intent to procure a breach of this particular contract. Additionally, Yellow Bus completely failed to establish any link between the damage suffered during the strike and the subsequent cancellation of the JDS contract over one year later. The two factors precipitating the cancellation by JDS--Yellow Bus' tax liabilities and inadequate service--had nothing to do with appellees' activities. Yellow Bus' difficulties with the IRS pre-dated the Local's involvement with the company. Abundant testimony linked the company's poor performance to lax employee discipline and the rapid deterioration of the company's stock of antiquated buses after the departure of its only skilled mechanic in the fall of 1982. A number of Yellow Bus' own witnesses admitted that these difficulties were not traceable to appellees' efforts or action. Since appellants failed to offer the most elementary evidence of any causal connection between the cancellation and the appellees' malefaction, the motion for a judgment notwithstanding the verdict was appropriately granted.
 
 
 20
 Appellants' objection to the grant of JNOV on abuse of process also has no merit. To prevail on abuse of process, a plaintiff must demonstrate that process is being used "to compel the party affected by it to do some collateral thing which he could not legally and regularly be compelled to do." Hall v. Hollywood Credit Clothing Co., 147 A.2d 866, 868 (D.C.App.1959). See also Jacobson v. Thrifty Paper Boxes, Inc., 230 A.2d 710, 711 (D.C.App.1967) (citing 1 Am.Jur.2d Abuse of Process Sec. 4 (1962)). Plaintiff must demonstrate not only ulterior motive, but success in achieving illegitimate ends with resulting injury. Morowitz v. Marvel, 423 A.2d 196, 198 (D.C.App.1980) ("[I]n addition to ulterior motive, one must allege and prove that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge."); see also Hall v. Hollywood Credit Clothing Co., 147 A.2d at 868; McCarthy v. Kleindienst, 741 F.2d 1406, 1414 (D.C.Cir.1984).
 
 
 21
 Appellants' abuse of process claim fails because one of the alleged ulterior aims is implausible, and the other was not achieved. The appellants claimed that Woodward sought to discover information vital to his criminal defense and to coerce the company to make labor concessions. However, the fact that Woodward's lawyer did not commence discovery until after Woodward's criminal charges were dropped conclusively discredits discovery as an "ulterior motive". As for the coercive contract claim, Woodward responded to the company's resistance by abandoning the "collateral" demand that Yellow Bus agree to sign a collective bargaining agreement as a condition of settlement of Woodward's lawsuit. He eventually agreed to drop the action in exchange for $3,000. However, even if Woodward had initially commenced legal action to induce Yellow Bus to acquiesce in his labor demands, appellants suffered no actionable injury because Woodward did not accomplish this impermissible purpose. See Morowitz v. Marvel, 423 A.2d at 198 ("[W]ithout more, [the] proffer that [defendant] filed [a claim] with the ulterior motive of coercing settlement is deficient.") Moreover, the procurement of an "ordinary" settlement will not ground abuse of process; the settlement must accomplish some outrageous end and represent a "perversion" of the judicial process. See id. In sum, plaintiffs have failed to make out essential elements of their abuse of process claim. The district court's decision to set aside the jury award for abuse of process was appropriate.
 
 IV. RICO COMPLAINT
 
 22
 In its original complaint, Yellow Bus alleged that the conduct of Woodward and the Local violated 18 U.S.C. Secs. 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act and requested treble damages under 18 U.S.C. Sec. 1964(c). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in * * * interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1962(d) prohibits any conspiracy to violate subsection (c). Section 1961 (1) and (5) of the statute define "racketeering activity" to include acts or threats involving murder, arson, and extortion punishable under state law. A "pattern" of such activity requires at least two acts occurring within ten years. 18 U.S.C. Sec. 1961(5). The predicate acts which combine to produce the pattern of illegal activity must be marked by the factors of "continuity plus relationship." S.Rep. No. 617, 91st Cong., 2d Sess. 158 (1969). See also Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985).
 
 
 23
 Yellow Bus listed ten predicate acts allegedly performed by the Local and Woodward in violation of D.C. and Maryland laws punishing extortion, including threats against property and threats of bodily harm. A careful examination of the pleadings reveals that five of the counts involve violence against property or persons unconnected with Yellow Bus or its labor organizing effort. These allegations are not properly part of Yellow Bus' Sec. 1962(c) RICO claim against appellees. Of the remaining counts, four allege direct threats to Yellow Bus property or employees which qualify as offenses listed in the Sec. 1961(1) definition of racketeering activity. Additionally, these predicate acts appear to fulfill the requirement for a "pattern"--"continuity plus relationship"--as stated in the Senate Report. The definition of "pattern" of conduct, provided by Congress later in the same bill, indicates that this term embraces "criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission * * * and are not isolated events." 18 U.S.C. Sec. 3575(e) (1982). See also Sedima, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. Here, appellees are accused of engaging in acts of vandalism and intimidation during a specific time period in pursuit of a unitary goal. We believe this scenario meets the statutory requirements for a "pattern of racketeering activity".
 
 
 24
 Nevertheless, the district court, in two separate orders, dismissed the RICO complaints against appellees. The count against the Local was dismissed because it designated the Local as both the RICO "person" and the RICO "enterprise", violating the requirement that these be separate and distinct entities under Sec. 1962(c). The court refused to allow the appellants to cure this deficiency by amending the complaint to name Yellow Bus as the "enterprise", reasoning that the amended complaint would not state a valid RICO claim because the Local did not fulfill the statutory requirement of participation in the conduct of Yellow Bus' affairs. The court also indicated that the motion had "come too late." In a second order dismissing the RICO complaint against Woodward, the court relied on the now repudiated requirement of demonstrating a distinct "RICO injury"--injury different in kind from that occurring as a result of the predicate acts themselves. See Sedima, S.P.R.L. v. Imrex Co., 741 F.2d 482 (2d Cir.1984), rev'd, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).
 
 
 25
 While the trial in this case was proceeding, the Supreme Court reversed the Court of Appeals decision in Sedima by holding that RICO required no allegation of a separate "racketeering injury". See Sedima, 473 U.S. at 493-500, 105 S.Ct. at 3284-87. On the basis of this clarification, we conclude that the district court erred in dismissing the RICO cause of action against Woodward. Our conclusion that the dismissal of the RICO count against the Local was error requires more extensive analysis. At the outset, we agree with the district court that the designation of the Local as both the "enterprise" and the defendant "person" does not comport with statutory language or design. In refusing to permit amendment of the complaint because of the timing of the request, however, the court abused its discretion. A complaint amended to name Yellow Bus as the RICO "enterprise" would state a cognizable claim under Sec. 1962(c), and that amendment should be permitted.
 
 
 26
 A. The "person" and the "enterprise" under Sec. 1962(c)
 
 
 27
 Section 1962(c) is directed at "any person employed by or associated with any enterprise" who participates in the enterprise's affairs by racketeering. (emphasis added). All but one of the Courts of Appeals considering the question have required that the "person" and "enterprise" be different entities under this section. See, e.g., Schofield v. First Commodity Corp., 793 F.2d 28, 30-31 (1st Cir.1986); Bennett v. U.S. Trust Co., 770 F.2d 308, 315 (2d Cir.1985), cert. denied, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); Haroco, Inc. v. American Nat'l Bank & Trust Co., 747 F.2d 384, 399-402 (7th Cir.1984); but see United States v. Hartley, 678 F.2d 961, 989-90 (11th Cir.1982); Bergen v. Rothschild, 648 F.Supp. 582, 589 (D.D.C.1986) (allowing identity of person and enterprise partnership). See generally, Enterprise: Relation of Liable Person, 5 RICO L.Rep. 364-365 (1987).
 
 
 28
 In perceiving and justifying this requirement, the courts rely on both the language of the provision and the policy behind the act. Logic alone dictates that one entity may not serve as the enterprise and the person associated with it because, as Judge Posner of the Seventh Circuit has stated, "you cannot associate with yourself." McCullough v. Suter, 757 F.2d 142, 144 (7th Cir.1985). The majority rule also reflects Congress' apparent decision in Sec. 1962(c) to target criminal activity of a particular kind--the exploitation and appropriation of legitimate business by corrupt individuals. Congress was aware that organized crime often operates by infiltration of legitimate enterprises through a pattern of racketeering activity. See S.Rep. No. 617, 91st Cong., 1st Sess. 76-78 (1969). In considering the intention of the provisions' drafters, courts have reasoned that section 1962(c) was intended to punish the person who conducts the affairs of an otherwise legitimate business in an illegal manner. "Such a distinction focuses the section on the culpable party and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity." Bennett v. U.S. Trust Co., 770 F.2d at 315. Allowing identity of person and enterprise would permit punishment of the exploited "victim" enterprise as well as the infiltrator person or entity. This consequence is both unintended and undesirable.
 
 
 29
 Under the rule requiring distinct entities, however, Sec. 1962(c) liability usually cannot be imposed on those organizations created solely for illegal purposes and operated to the detriment of third parties by corrupt directors or controlling partners. Consequently, an exception to the non-identity rule has at times been made for the institution that functions as both "perpetrator" and "victim". See e.g., United States v. Hartley, 678 F.2d at 989 (because plaintiff could have named culpable corporate directors as defendant "association-in-fact" distinct from corporate enterprise, court "pierced the corporate veil" to allow corporation to be named as both defendant and enterprise).
 
 
 30
 It is important to realize, however, that corrupt organizations which conduct their own affairs by illegal means may often be subject to direct liability under another section of RICO. Section 1962(a) prohibits the receipt and subsequent investment of racketeering proceeds into an "enterprise". Under this section--which does not contain the language of subsection (c) implying that the person and enterprise must be distinct--a number of courts have rejected a non-identity requirement. At least three Courts of Appeals have concluded that "a corporation-enterprise may be held liable under subsection (a) where the corporation is also a perpetrator" and not merely a passive instrument of the racketeering activity. See Haroco, 747 F.2d at 402 (7th Cir.); Schofield, 793 F.2d at 31 (1st Cir.). See also Schreiber Distributing Co. v. Serve-Well Furniture Co., 806 F.2d 1393, 1398 (9th Cir.1986) (allowing corporation that is the "direct or indirect beneficiary" of pattern of racketeering activity to be both "person" and "enterprise" under 1962(a)). When interpreted in this way, section 1962(a) provides one mechanism to punish such corrput organizations by depriving them of their ill-gotten gains.
 
 
 31
 It is thus apparent that the language of each section contemplates a different role the enterprise may play in a variety of corrupt schemes. See Haroco, 747 F.2d at 401 (Under the respective subsections of 1962, "the enterprise may play the various roles of victim, prize, instrument, or perpetrator. The RICO liability of the enterprise should depend on the role played.") Through section (a), Congress provided for punishment of organizations which in fact gain from their wrongdoing by focusing on profits gleaned from illegal activities, thus "sparing" organizations that do not so profit. Section (c) likewise immunizes organizations which are merely "victims", but this result depends on the requirement of non-identity of person and enterprise which also places some corrupt organizations beyond reach. The use of (c) to impose liability on some types of organizations covered by (a) carries the danger of exposing innocent organizations to prosecution. Absent the non-identity requirement, respondeat superior could operate to impose Sec. 1962(c) liability on a corporation that is unaware of the racketeering activities of its agents and has not been enriched by those activities. Since we agree with the court in Schofield, 793 F.2d at 32, that "the concept of vicarious liability is directly at odds" with the Congressional intent behind Sec. 1962(c), we think it wise not to risk this consequence by disturbing Congress' carefully crafted scheme. We therefore hold with those courts that forbid identity of person and enterprise under Sec. 1962(c) and conclude that the original complaint naming the Local as person and enterprise was properly dismissed.
 
 
 32
 Yellow Bus attempts to avoid this legal result by depicting the RICO enterprise as an "association-in-fact" comprised of the Local and Woodward, an entity distinct from each of these named defendants. This attempt is unavailing. It is true that under the expansive Sec. 1961 definition of "enterprise", some courts have permitted the enterprise to be defined as an association composed of some number of the distinct individual defendants or defendant corporations. See Cullen v. Margiotta, 811 F.2d 698, 729-730 (2d Cir.), cert. denied sub nom. Nassau County Republican Committee v. Cullen, --- U.S. ----, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987) ("[W]e see no reason why a single entity could not be both the RICO 'person' and one of a number of members of the RICO 'enterprise.' "); Fustok v. Conti-commodity Services, Inc., 618 F.Supp. 1074, 1076 (S.D.N.Y.1985) (group of individual corporate defendants may qualify as "association-in-fact" enterprise); see also United States v. Perholtz, 657 F.Supp. 603, 605 (D.D.C.1986); but cf. Beck v. Cantor Fitzgerald & Co., 621 F.Supp. 1547, 1563 (N.D.Ill.1985) (association of defendants may constitute an 'enterprise' only if that enterprise has a "separate and sufficiently lasting identity apart from the 'person' or 'persons' * * * who are employed [by] or associated with it.") Several courts, however, have disallowed a Sec. 1962(c) claim where the relationship among the members of the enterprise association is the relationship of parts to a whole. That is, while the corporate or organizational defendant may itself be a member of the enterprise association, the members of the enterprise association may not simply be subdivisions, agents, or members of the defendant organization. See Hanline v. Sinclair Global Brokerage Corp., 652 F.Supp. 1457, 1462 (W.D.Mo.1987) (enterprise association of corporation with its employees not distinct from corporation defendant); see also Atkinson v. Anadarko Bank & Trust Co., 808 F.2d 438, 441 (5th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987) (bank, holding company, and three employees have no distinct existence apart from defendant bank); Tarasi v. Dravo Corp., 613 F.Supp. 1235, 1236-37 (W.D.Pa.1985) (corporate defendant may not be associated with its agent to form 1962(c) enterprise).
 
 
 33
 In short, an organization cannot join with its own members to do that which it normally does and thereby form an enterprise separate and apart from itself. Where, as here, the organization is named as defendant, and the organization associates with its member to form the enterprise "association-in-fact", the requisite distinctness does not obtain. As the district court pointed out, there is no difference between the union as an entity including Woodward as officer, and the union plus Woodward, since "the whole is no different than the sum of its parts in this context." Furthermore, allowing plaintiffs to generate such "contrived partnerships" consisting of an umbrella organization and its subsidiary parts, would render the non-identity requirement of section 1962(c) meaningless. We decline to permit such an "end run" around the statutory requirements.
 
 
 34
 B. "Participate in the conduct of the affairs"
 
 
 35
 The district court rejected Yellow Bus' attempt to charge the Local as a RICO defendant under Sec. 1962(c) by amending the complaint to name itself as the "enterprise". In addition to objecting to the timing of the request, the court concluded that the amended complaint would fail to state a proper RICO claim because the union's acts were not committed in the conduct of Yellow Bus' affairs; rather, Yellow Bus was merely the "setting" for the union's activities. We disagree with the district court's assessment of the relationship between the bus company and the Local's alleged conduct, and reject as overly restrictive any interpretation of the language of Sec. 1962(c) which would necessitate a dismissal of the RICO claim against the Local in this case.
 
 
 36
 Unlike "enterprise" and "pattern", the terms "conduct", "participate" and "through" do not have statutory definitions. The Act has been challenged as unconstitutionally vague for this reason. See United States v. Stofsky, 409 F.Supp. 609 (S.D.N.Y.1973). In rejecting the vagueness argument the court in Stofsky explained:
 
 
 37
 The statute does not define [the] connection by distinguishing between predicate acts which play a major or a minor role, or any role at all in what might seem as the usual operation of the enterprise; nor does it require that such acts be in furtherance of the enterprise, as defendants suggest it must.
 
 
 38
 In this Court's view, the statute fails to state these requirements because Congress did not intend to require them in these terms. The perversion of legitimate business may take many forms. The goals of the enterprise may themselves be perverted. Or the legitimate goals may be continued as a front for unrelated criminal activity. Or the criminal activity may be pursued by some persons in direct conflict with the legitimate goals, pursued by others. Or the criminal activity may, indeed, be utilized to further otherwise legitimate goals. No good reason suggests itself as to why Congress should want to cover some, but not all of these forms; nor is there any good reason why this Court should construe the statute to do so. It plainly says that it places criminal responsibility on both those who conduct and those who participate, directly or indirectly, in the conduct of the affairs of the enterprise, without regard to what the enterprise was or was not about at the time in question. This may be broad, but it is not vague.
 
 
 39
 Id. at 613. Thus, in Stofsky's view, the "requisite nexus" between unlawful acts and enterprise activities was left undefined "for the simple reason that no particular degree of interrelationship is required." United States v. Field, 432 F.Supp. 55, 58 (S.D.N.Y.1977) (citing Stofsky ).
 
 
 40
 Notwithstanding Stofsky's refusal to clarify the reach of Sec. 1962(c), courts have struggled to define the scope of behavior chargeable under that section. Attempts have been made to formalize the intuition that Sec. 1962(c) was not meant to punish predicate activity which forms no part of the ordinary affairs of the enterprise, and is only incidentally related to its day-to-day business. See, e.g., U.S. v. Yonan, 623 F.Supp. 881, 883 (N.D.Ill.1985), aff'd in part and rev'd in part, 800 F.2d 164 (7th Cir.1986) (seeking a test for "association" and "participation" to disqualify, for example, "robbing a bank twice"). Some federal courts have required that the defendant participate in the "direction" or "management" of the organization, or have fashioned other rules to restrict the universe of relationships subject to Sec. 1962(c) liability. See, e.g. Bennett v. Berg, 710 F.2d 1361, 1364 (8th Cir.), cert. denied sub nom. Prudential Ins. Co. v. Bennett, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983) ("[S]ome participation in the operation or management of the enterprise itself" is ordinarily required); Bank of America v. Touche Ross & Co., 782 F.2d 966, 970 (11th Cir.1986) (chargeable predicate acts must be "helpful or necessary" to the operation of the enterprise); United States v. Ladmer, 429 F.Supp. 1231, 1244 (E.D.N.Y.1977) (dismissing a RICO charge based on unauthorized expenditure of union funds for personal travel expenses because unrelated to the enterprise's "essential" or "core" function).
 
 
 41
 Other federal courts, however, merely impose an open-ended requirement that the predicate acts relate to, or have some effect upon, the affairs of the enterprise. See, e.g., United States v. Welch, 656 F.2d 1039, 1060-62 (5th Cir.1981), cert. denied sub nom. Cashell v. U.S., 456 U.S. 915, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982) (holding that 1962(c) requires a "sufficient nexus between the racketeering activities and the affairs of the enterprise" and rejecting the requirement of "benefit" to the enterprise); United States v. Carter, 721 F.2d 1514, 1525-27 (11th Cir.), cert. denied sub nom. Morris v. U.S., 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984) (allowing "proof of effect on the common everyday affairs of the enterprise"). In United States v. Scotto, 641 F.2d 47, 54-55 (2d Cir.1980), cert. denied, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981), union officials were accused of forgiving contract requirements and steering business in exchange for illegal payoffs. The court refused to embrace the "core functions" formula of Ladmer, or the Berg requirement that the conduct relate to the operation or management of the enterprise. Citing with approval to the district court decision in United States v. Stofsky, the Scotto court fashioned a two part test for "conducting the activities of an enterprise", holding that the proper connection is established when "1) one is enabled to commit the predicate offenses solely by virtue of [one's] position in the enterprise or involvement in or control over the affairs of the enterprise, or 2) the predicate offenses are related to the activities of that enterprise." Id. at 54. The court went on to note that "[s]imply committing predicate acts which are unrelated to the enterprise or one's position within it would be insufficient." Id. Another Court of Appeals restated the Scotto test in United States v. Cauble, 706 F.2d 1322 (5th Cir.1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984), finding the demands of Sec. 1962(c) satisfied when "the defendant's position in the enterprise facilitated his commission of the racketeering acts" and "the predicate acts had some effect on the lawful enterprise." Id. at 1333. See also United States v. Provenzano, 688 F.2d 194, 200 (3rd Cir.), cert. denied, 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982) (following Scotto ).
 
 
 42
 We decline to adopt a more restrictive standard than that enunciated in Cauble and Scotto. Section 1962(c) of RICO refers to direct as well as indirect participation in the enterprise's affairs, and imposes no requirement that participation be at the management level or relate to "core functions". Moreover, Congress has expressed its intention that RICO be "liberally construed to effectuate its remedial purposes." Pub.L. No. 91-452, Sec. 904(a), 84 Stat. 947 (1969). The inappropriateness of artificially restricting the types of relationships satisfying Sec. 1962(c) is especially apparent in cases of predicate acts committed by enterprise "outsiders" rather than "insiders". In such instances, a stringent test threatens to frustrate RICO's broad remedial purpose. See United States v. Elliott, 571 F.2d 880, 903 (5th Cir.), cert. denied sub nom. Delph v. United States, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978) ("The substantive proscriptions of the RICO statute apply to insiders and outsiders--those merely 'associated with' an enterprise--who participate directly and indirectly in the enterprise's affairs. [Citations omitted.] Thus the RICO net is woven tightly to catch even the smallest fish, those peripherally involved with the enterprise.")
 
 
 43
 Mindful of these flexible terms, a number of courts have permitted RICO actions in bribery cases against those seeking to influence organizations in which they hold no official position of authority. See, e.g., United States v. Forsythe, 560 F.2d 1127, 1136 (3rd Cir.1977) (reversing a lower court holding that a magistrate who accepts bribes from a bonding company is not sufficiently "associated with" the bonding company enterprise's affairs). See also United States v. Bright, 630 F.2d 804, 830 (5th Cir.1980) (holding that bribing and influencing a sheriff qualified as participation in the affairs of the sheriff's office); United States v. Lee Stoller Enterprises, 652 F.2d 1313, 1320-21 (7th Cir.), cert. denied, 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 615 (1981) (businessman paying kickbacks to sheriff in exchange for lucrative contracts held to participate in sheriff's office affairs); United States v. Blackwood, 768 F.2d 131, 137-38 (7th Cir.), cert. denied, 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985) (applying Cauble to allow Sec. 1962(c) RICO charge against a police officer charged with soliciting bribes to influence county court case disposition); United States v. Yonan, 800 F.2d 164, 167 (7th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 930, 93 L.Ed.2d 981 (1987) (reversing the dismissal of a RICO count against a criminal defense attorney charged with bribing a state district attorney).
 
 
 44
 The Yonan court stressed that defendant need not have a stake or ongoing interest in the enterprise, nor any direct contact with managers of the enterprise, as long as the predicate acts formed part of a "business relationship." Id. at 168. In a context not involving official corruption, the court in State of New York v. O'Hara, 652 F.Supp. 1049, 1053-54 (W.D.N.Y.1987), applied the analysis in Yonan to uphold a RICO claim against a private contractor who allegedly submitted fraudulent bids on a municipal waste clean-up contract. The court held that this activity fulfilled the statutory requirement of association with the City of Niagara Falls through indirect participation in its affairs. See also United States v. Starnes, 644 F.2d 673, 679 (7th Cir.), cert. denied, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981) (arsonist hired by company official to "torch" its headquarters "associates with" and "participates" in the company's affairs under Sec. 1962(c)).
 
 
 45
 The alleged relationship between the Local and Yellow Bus falls well within the scope of activity contemplated by the words of the statute, and meets the appropriately minimal requirements set out in Scotto, Cauble, and Yonan and their progeny. As in Yonan, Yellow Bus and the union had a full-fledged "business relationship"--Yellow Bus was not merely a "setting" for crimes otherwise unrelated to the company's affairs. As we have shown, it matters not that Woodward and the Local did not direct or manage the "core" day-to-day transportation activities of Yellow Bus, or that the union initially exerted its influence over the conduct of employees, rather than management. A strike for recognition of the union as a collective bargaining representative is an activity sufficiently related to the company's ongoing role as a business enterprise and employer to establish the requisite nexus. Although the Local and the bus company were associated for a limited period, their relationship had vital significance for the economic destiny of Yellow Bus. The elaborate legal structure which governs all aspects of management-labor interaction only serves to emphasize that a strike by a union seeking to bargain with an employer is an important "affair" of the employer company. More often than not, it is a momentous event in the life of that enterprise.
 
 
 46
 Having established that the strike and organizational effort were "affairs" of Yellow Bus, we must decide whether appellees' actions, if proved, would amount to participation in the conduct of those affairs "through a pattern of racketeering activity." Yellow Bus alleges that the violence was committed with the intent to influence the company's conduct. Allegations of a requisite number of intentional destructive acts or threats during the strike would alone satisfy the participation requirement for the purpose of stating a RICO claim. Any further showing of success in influencing concrete company choices through violent extortion is unnecessary. In contending that appellees chose to avail themselves of violent tactics as one way of conducting the strike, Yellow Bus charges that appellees participated in the conduct of the company's affairs for the duration of the strike by means of these activities, among others. This clearly serves to fulfill the requirement of participation in the affairs of the company.V. RULE 15(A) LEAVE TO AMEND
 
 
 47
 Finally, we hold that the district court abused its discretion to the extent that it relied on lack of timeliness to justify its refusal to leave to amend. Fed.R.Civ.P. 15(a) declares that leave to amend "shall be freely given when justice so requires". As the Supreme Court forcefully stated in Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), "this mandate is to be heeded". These pleading rules were designed to facilitate a proper decision on the merits, and the opportunity to test the merits should ordinarily be accommodated if injustice will not otherwise result. See generally 6 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1484 (1971).
 
 
 48
 The reasons recognized as justifying denial of motion to amend--"undue delay, bad faith or dilatory motive * * *, repeated failure to cure deficiencies * * *, undue prejudice to the opposing party * * *, futility of the amendment," 371 U.S. at 182, 83 S.Ct. at 230--are not applicable here. Only two months elapsed between the March 31, 1984 hearing at which the court first expressed doubts about the deficiencies of the original pleadings and Yellow Bus' request to amend those pleadings. When the court ruled in late June on the Local's April 13 motion to dismiss the original RICO claim against the union, commencement of trial was still over eight months away. Consideration of this timetable indicates that Yellow Bus moved with more than reasonable alacrity to correct its pleadings, and that ample time was available to defendants for trial preparation. Amendment of the complaint, in any event, would not have imposed any additional burdens on the Local because the restated RICO claim required consideration of no new facts and arguments. Since there was no evidence of prejudice to appellees or of deliberate delay or bad faith, leave to amend was appropriate and should have been granted.
 
 CONCLUSION
 
 49
 We remand to the district court for a trial on the RICO charges after Yellow Bus has had the opportunity to lodge revised pleadings. We also reinstate the judgment against the Local for malicious destruction of property. After considering the remaining contentions on appeal, we find them to be without merit. Accordingly, the judgment of the district court is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings.
 
 HARRY T. EDWARDS, Circuit Judge concurring:
 
 50
 I have nagging doubts about our holding that "the strike and organizational effort were 'affairs' of Yellow Bus," maj. op. at 23, and that, consequently, plaintiff might be able to state a cause of action under section 1962(c) of RICO. This result seems strangely at odds with certain fundamental precepts of labor law and collective bargaining. However, I recognize that this holding finds support in the case law, and that it is not inconsistent with RICO's broad remedial purpose. I therefore concur, albeit with pause.